## MERRYMAN *v.* BOURNE ET AL.

1. In California a judgment in ejectment has the same conclusiveness as a judgment in any common law action, and in determining its effect the same principles are applied which control the result of the like inquiry in other cases. A defeated plaintiff may bring a new action upon an after-acquired title with the same effect as a stranger, in whom such title

might have been vested, and the former judgment will not be a bar to the new action.

2. If a party who has entered into possession of land as a tenant under another is threatened with suit upon a paramount title, the threat, under such circumstances, is equivalent to eviction. He may, thereupon, submit in good faith, and attorn to the party holding a valid title, to avoid litigation. In such case it is incumbent upon him, and those who have profited by his submission, to show the existence and superiority of the title in question.

3. In this case W. had recovered in ejectment, upon an adverse title, against some of the parties in possession of the premises holding under one F.; and he threatened suit against the others, who to avoid expensive litigation acknowledged the title of W., and took leases from him, and at the expiration of the leases surrendered the possession to him. This possession is found to have been fairly and honestly acquired, without force, fraud, or surprise : *Held*, that if the holding of the parties under F. was that of tenants, the relation of landlord and tenant between them was thus extinguished; but if the holding by them was as grantees in fee, they were not estopped from denying F.'s title. Grantees in fee hold adversely to all the world, and have the same right to deny the title of their vendors as the title of any other party.

4. The alcalde was the chief executive officer of the pueblo of San Francisco, and, as such, had authority to make grants of the pueblo lands subject to the authority lodged in the ayuntamiento, and the still higher authority of the departmental governor and assembly.

5. The ordinance of the common council of San Francisco, known as the Van Ness ordinance, gave to parties holding alcalde grants within certain defined limits in that city, where the grants had been recorded in the proper books, deposited with the recorder of the county of San Francisco, on or before April 3d, 1850, a new title upon which an action would lie, if the grants were by themselves without that ordinance ineffectual to pass the title.

6. The act of Congress of July 1st, 1864, is a confirmation of the title held under the Van Ness ordinance, and took effect by relation as of the time when the act of the legislature of the State confirming the ordinance was passed.

ERROR to the Circuit Court for the District of California.

Merryman brought ejectment, in April, 1860, against Bourne and several others for a parcel of land situated within the corporate limits of the city of San Francisco, as defined by her charter of 1851. The case was tried by the court without a jury, by stipulation of parties in writing. The facts found by the court, and its conclusions of law, were as follows :

1st. That on the 15th day of April, 1847, there was duly issued by Edwin Bryant, then alcalde of the town of San Francisco, to S. E. Woodworth, one of the defendants, in due form, a grant in fee of a one hundred vara lot,* within the corporate limits of said town, which embraced the premises described in the complaint in this action, and which grant was registered and recorded in a proper book of records deposited in the office, or custody, or control of the recorder of the county of San Francisco, on or before the 3d day of April, A.D. 1850.

2d. That soon after this grant was issued the said S. E. Woodworth entered into possession of the said lot, and inclosed the same with a fence, and so continued in possession for some months then next ensuing.

3d. That subsequently the fence, having either fallen down or been removed by trespassers, one Fulton, claiming under a grant issued by one Colton, a justice of the peace, for said lot, entered on a portion of the lot; and thereupon Woodworth, in the year 1850, brought an action of ejectment against Fulton in the Court of First Instance, at San Francisco, to recover the possession of the premises, in which action judgment was rendered in favor of Woodworth, on which a writ of restitution issued, by virtue of which Woodworth was restored to the possession, after which Fulton appealed to the Supreme Court of the State of California, by which court the judgment was reversed and the cause remanded; whereupon a final judgment was afterwards rendered in the lower court in favor of Fulton, and by virtue of process issued thereon Fulton was restored to his possession, and he and those claiming under him continued in possession until they were ejected as hereinafter stated.

4th. That in January, 1852, the said S. E. Woodworth, by a good and sufficient deed of bargain and sale, conveyed the said one hundred vara lot, including the premises in controversy, to F. A. Woodworth, now deceased, who, in the years 1853 and 1854, instituted in the District Court of

---

* A one hundred vara lot is a lot 275 feet square.

the 4th judicial district in San Francisco, actions of ejectment against some of the parties in possession of the premises claiming under Fulton, and recovered judgments on which writs of restitution were issued and served, by virtue of which F. A. Woodworth was restored to the possession of the premises occupied by the defendants in said writs, and the remaining persons in possession of said premises under said Fulton, and who were not included in said ejectment suits, on being threatened with suits by said F. A. Woodworth to recover the possession of the premises held by them, and with a view to avoid expensive litigation, acknowledged the said Woodworth's title and took leases from him; at the expiration of which leases they surrendered the possession to him, Woodworth; and the possession of said Woodworth, so obtained under writs of restitution and by surrender, was fairly and honestly acquired, without force, fraud, or surprise.

5th. That on the 12th December, 1849, Colton, justice of the peace, already mentioned, issued a grant to one Atwill for the said one hundred vara lot, and on the 11th February, 1850, Atwill conveyed to the said Fulton whatever title he acquired by the grant in and to the premises in controversy; and the plaintiff, before and at the time of the institution of this suit, had acquired and held by regular mesne conveyances all the title of Fulton.

6th. That at the time of the commencement of this action the said F. A. Woodworth, and the other defendants under a license from him, were in possession of the premises in controversy.

And as conclusions of law from the facts aforesaid, the court found:

1st. That the grant from Colton, the justice of the peace, to Atwill was void, and conveyed no title to the premises; and that the judgment in the suit of *Woodworth* v. *Fulton* was in no respect an affirmance of the validity of the title of Fulton, but only a disaffirmance of the validity of the title of Woodworth, the plaintiff in that suit, as the title was then set up and held by him.

2d. That as against the defendants in this suit, peaceably in possession of the premises in controversy, the plaintiff must recover on the strength of his own title; that the title set up by him was invalid, and the judgment aforesaid did not estop the defendants to deny the validity of said plaintiff's title.

3d. That the judgment aforesaid was a decision that the defendant Woodworth's title, as then held by him, was invalid, but it did not estop him to set up any title to said premises acquired since the said judgment.

4th. That by virtue of an act of the legislature of the State of California, entitled "An act concerning the city of San Francisco, and to ratify and confirm certain ordinances of the common council of said city," approved March 11th, 1858, and by virtue of the ordinances referred to in said act, and of the 5th section of the act of Congress entitled "An act to expedite the settlement of titles to lands in the State of California," approved July 1st, 1864, all the title of the United States, and of the city of San Francisco, in and to the premises in controversy, became and was vested in F. A. Woodworth, and by virtue thereof the defendant, S. E. Woodworth, as executor of the said F. A. Woodworth, deceased, was entitled to the possession of the premises described in the complaint and every part thereof.*

Judgment was accordingly rendered for the defendants, and the plaintiffs brought the case to this court on writ of error.

*Mr. Cushing (who filed a brief of Messrs. Turner, Patterson, Jarboe, and Harrison), for the plaintiff in error:*

The decision by the Supreme Court of California† in the case of *Woodworth* v. *Fulton*, was a final judgment, involving and determining the *invalidity of the grant* which is relied upon as a defence to this action. That determination was

---

* For a more minute statement of the provisions of the Van Ness ordinance and act of Congress, see Lynch *v.* Bernal, *supra*, p. 315.

† 1 California, 295.

(and is) not only the law of that case but the law of *that piece of property.*

The defendant, Woodworth, and all claiming under him, as against Fulton and the plaintiff (here), who is in privity with him, are *barred from asserting that title.* The same evidence which Woodworth relied upon in *Woodworth v. Fulton, i. e.,* the alcalde grant, is now relied on as a defence to this action.* The facts in *Woodworth v. Fulton,* as to Woodworth's title and right of possession, are the same as in this case, and the *decision* in that case was upon the law of the alcalde grant.† It will not be pretended that while Fulton and his tenants and privies were in possession, under the writ of restitution and judgment in *Woodworth* v. *Fulton,* they were trespassers on the said premises, or that a judgment for mesne profits could have been recovered against them? The law after a solemn determination placed them there, and they were therefore rightfully there. When did that right *cease?* Never by any act of theirs.

In California the action of ejectment, as at common law, was never used. There it is " an action for the recovery of real property; or of an estate or interest therein; or for the determination in any form of such right or interest."‡

The facts found as to the mode in which F. A. Woodworth obtained possession of part of the premises from Fulton's tenants—his threats and compromises—show a tampering with them; and, having entered under our tenants, he himself becomes our tenant, and is estopped from asserting that the plaintiff is not entitled to possession.

Conceding that, by the later decisions of California, an alcalde grant, such as was here set up, may be valid, those decisions cannot affect the prior unreversed case of *Woodworth* v. *Fulton,* in which it was held otherwise.

So far as the act of Congress of July 1st, 1864, is relied on, it is enough to say, that it was passed more than four

---

* Broom's Legal Maxims, 229; Eastman *v.* Cooper, 15 Pickering, 285; Baker *v.* Rand, 13 Barbour, 152; Burkland *v.* Brown, 5 Sandford, 134.

† Betts *v.* Starr, 5 Connecticut, 550; Pleak *v.* Chambers, 7 B. Monroe, 566.

‡ *Vide* Practice Act.

years after the institution of this suit. Of course, it cannot be considered.

*Mr. G. H. Williams, contra.*

Mr. Justice SWAYNE delivered the opinion of the court.

This case is brought before us by a writ of error to the Circuit Court of the United States for the District of California.

The plaintiff in error was the plaintiff in the court below. The suit was ejectment, brought to recover the premises described in the plaintiff's declaration. They are situated in the city of San Francisco. The parties stipulated in writing that the cause should be tried by the court without a jury, and it was tried accordingly. The court found the facts specially, pursuant to the statute which governs the practice in such cases, and they are set forth in the record. Judgment was given for the defendants, and the plaintiff thereupon sued out this writ of error. So far as the facts of the case are concerned the findings of the court are conclusive between the parties. The only questions open for our consideration are questions of law, arising upon the facts as thus presented in the record.

Three grounds are relied upon for the reversal of the judgment.

Two of them are substantially the same, and will be considered together.

It is insisted that the rights of the parties, touching the premises in controversy, were settled in favor of the plaintiff in error, in the case of *Woodworth* v. *Fulton,* reported in 1st California Reports, 295.

This is an error. Woodworth prosecuted the action. The premises were the same with those involved in the present suit. The Supreme Court of the State decided two points, and none other: (1.) That the alcalde grant to S. E. Woodworth was void for want of the requisite authority in the officer who made it—the court holding that an alcalde was incompetent to give any title; (2.) That if a recovery could

be had in an action of ejectment, upon mere prior posses-
sion, no sufficient possession was shown on the part of the
plaintiff. Nothing was decided or said by the court as to
the title of the defendant.

In California a judgment in ejectment has the same con-
clusiveness as a judgment in any common law action, and
in determining its effect the same principles are applied
which control the result of the like inquiry in other cases.
A defeated plaintiff may bring a new action upon an after-
acquired title with the same effect as a stranger in whom
such title might have been vested, and the former judgment
will no more bar one than the other.*

It appears by the finding of facts that F. A. Woodworth
did bring a new action against a part of those in possession.
He recovered and ousted the defendants by writs of restitu-
tion. The other parties in possession thereupon surrendered
and attorned to him. He thus acquired possession of the
entire premises, and he, or those claiming under him, held
it when this suit was instituted.

The cases in which the judgments were recovered are not
before us. Who the defendants were, and what title was
developed by the plaintiff, we do not know. For all the
purposes of this case the judgments must be held to have
been properly rendered, and to be valid. They cannot be
collaterally questioned in this proceeding.

It is insisted also that Woodworth obtained possession of
a part of the premises by tampering with the tenants of
Fulton, under whom the plaintiffs in error claim, and thus
became such tenant himself, and hence is estopped from de-
nying the validity of the alleged Fulton title.

The language of the finding upon this subject is as fol-
lows: "And the remaining persons in possession of said
premises under said Fulton, and who were not included in
said ejectment suits, on being threatened with suits by said
F. A. Woodworth to recover possession of the premises held
by them and with a view to avoid expensive litigation, ac-

---

* Barrows v. Kindred, 4 Wallace, 399.

knowledged said Woodworth's title, and took leases from him, at the expiration of which leases they surrendered the possession to the said Woodworth, and the possession of said Woodworth so obtained under said writs of restitution, and by surrender, was fairly and honestly acquired, without force, fraud, or surprise."

How many such parties were in possession, what portion of the premises their possession embraced, and whether their possession under Fulton was as vendees, lessees, or otherwise, does not appear.

If they were grantees in fee the principle relied upon has no application. It is one of the incidents of subinfeudation, and was brought into the common law from the feudal system. It does not reach the relation of vendor and such a vendee. The latter holds adversely to all the world, and has the same right to deny the title of his vendor as the title of any other party.*

Error is not to be presumed. It must be affirmatively shown. Doubts are to be resolved in favor of the judgment rather than against it. But if the parties were the tenants of Fulton, the fact would not avail the plaintiff in error. The principle sought to be applied is subject to several well-settled qualifications. It may be shown that the landlord's title has ceased by expiration or transfer. If the tenant be evicted, he may take a new lease from the party evicting him. It has been held, that if threatened with suit upon a paramount title, the threat, under such circumstances, is equivalent to eviction. He may, thereupon, submit in good faith, and attorn to the party holding a valid title, to avoid litigation. In such case it is incumbent upon him, and those who have profited by his submission, to show the existence and superiority of the title in question.†

---

* Blight's Lessee v. Rochester, 7 Wheaton, 535; Watkins v. Holman, 16 Peters, 26; Croxall v. Shererd, 5 Wallace, 268; Osterhout v. Shoemaker, 8 Hill, 518; Barker v. Soloman, 2 Metcalf, 32.

† Mayor of Poole v. Whitt, 15 Meeson & Welsby, 577; Emery v. Barnett, 4 Common Bench, N. S. 423; Lunsford v. Turner, 5 J. J. Marshall, 106; Cutbertson v. Irving, 4 Hurlstone & Norman, 758; Jordan v. Twells, Cases *tempore* Hardwicke, 172.

Upon the disavowal of the landlord's title the relation of landlord and tenant ceases, and, as between them, the tenant becomes a trespasser. The statute of limitations begins to run, and the landlord may sue at once to recover possession. He need not wait for the end of the leasehold term.*

In the case under consideration, Woodworth had recovered upon the adverse title against a part of those in possession, and threatened suit against the others. They yielded, to avoid the inevitable adverse consequences of a contest. This they had a right to do. The court found that the possession was obtained by Woodworth " fairly and honestly," " without force, fraud, or surprise." This is conclusive as to the integrity and validity of the transaction, and brings the case within the authorities referred to. The relation of landlord and tenant between Fulton and those parties, if it subsisted before, was thus extinguished.

Woodworth claimed title under an alcalde grant of the 15th of April, 1847. Fulton, under a grant from a justice of the peace, of the 21st of December, 1849. It is not claimed that the latter grant is of any validity.

Emanating, at the time it bears date, from such a source, it is as if it came from any other person unauthorized to give it, and did not carry with it even color of title. It is utterly void. It may, therefore, be laid out of view, as an element in the case of no moment.

The conquest of California by the arms of the United States is regarded as having become complete on the 7th of July, 1846. On that day the government of the United States succeeded to the rights and authority of the government of Mexico. The dominion of the latter sovereignty was then finally displaced, and succeeded by that of the former. Before that time, the pueblo or village of San Francisco existed, and under the laws of the country was entitled to the territory within certain prescribed limits, known as pueblo lands. It had also an ayuntamiento or town council, and an alcalde. The alcalde was the chief

---

* Willison *v.* Watkins, 3 Peters, 43.

executive officer of the pueblo, and, as such, had authority
to make grants of the pueblo lands.

The exercise of this function was subject to the authority
lodged in the ayuntamiento, and to the still higher authority
of the departmental governor and assembly. In the case
of *Woodworth* v. *Fulton*,* it was held by the Supreme Court
of the State that, from the time of the conquest, these pueblo
lands, so far as they had not been granted to individuals,
became a part of the public domain of the United States,
and, as such, subject to the exclusive control and dispo-
sition of Congress. This doctrine was subsequently over-
ruled in the case of *Cohas* v. *Raisin*.† It was there held that
the conquest had no such effect, but that the lands continued
to be the public property of the municipality, as before the
war; and that the laws of Mexico relating to the subject
continued in force until changed by the legislative authority
of the State. It was further held that an alcalde grant, made
after the conquest, was to be presumed valid, and was com-
petent to convey title. These doctrines are now firmly estab-
lished as a part of the rules of property of the State.‡

But it is insisted, in behalf of the plaintiffs in error, that
these adjudications cannot affect the prior unreversed judg-
ment in the case of *Woodworth* v. *Fulton*, in which the rulings
were otherwise. Conceding this to be so, the result of this
case must still be against the plaintiff in error. The common
council of San Francisco, by an ordinance of the 20th of
June, 1855, known as the Van Ness ordinance, relinquished
all her rights in the pueblo lands of the city to the parties
respectively within the category of Woodworth, and to those
claiming under them by competent mesne conveyances.
This ordinance was confirmed by an act of the legislature
of the State of the 11th of March, 1858.§

This gave to Woodworth, and those claiming under him,
a new and after-acquired title, upon which, according to the

---

    * 1 California, 295.                      † 3 California, 434.

    ‡ Hart *v.* Burnett, 15 California, 530; Payne & Dewey *v.* Treadwell, 16
Id. 221; White *v.* Moses, 21 Id. 34.

    § 15 California, 627, note 3.

later adjudications referred to, he was entitled to recover, and to an action upon which the prior judgment in *Woodworth* v. *Fulton* was not and could not be a bar. The act of Congress of July 1st, 1864, was a further confirmation of the Woodworth title, and operated in the same manner as the ordinance of the city council and the act of the legislature before mentioned.

It is said that the act of Congress was passed after the institution of this suit, and cannot, therefore, be considered. To this there are two answers. It is by no means clear that the act was necessary to the completeness and validity of the title in question. The later adjudications referred to, made before the passage of the act, held by necessary implication that it was not. But if it were necessary, we have no difficulty in holding that it took effect by relation, as of the time when the act of the legislature confirming the ordinance of the council was passed.*

We think the facts found by the court below fully sustain the judgment given, and it is

AFFIRMED.

---

* Poole et al. *v.* Fleeger et al., 11 Peters, 185; Jackson *v.* Dickenson et al., 15 Johnson, 309; Hammond *v.* Warfield et al , 2 Harris & Johnson, 155; McConnell *v.* Brown, Littell's Select Cases, 460; Pearson *v.* Darrington, 21 Alabama, 175.

