SCOTT et al. v. MINERAL DEVELOPMENT CO.

(Circuit Court of Appeals, Sixth Circuit.   May 12, 1904.)

No. 1,248.

**1. ADVERSE POSSESSION—FEDERAL COURTS—FOLLOWING STATE DECISIONS.**

The Kentucky statute of limitations relating to actions for the recovery of land has been liberally construed and applied by the Court of Appeals of the state in respect to the adverse possession of settlers which will ripen into a title thereunder, on account of the confusion created by the loose practice of the state in issuing patents for conflicting grants, and its decisions, having become a rule of property in the state, will be followed by the federal courts.

**2. SAME—WHAT CONSTITUTES—KENTUCKY STATUTES.**

Under the statute of limitations of Kentucky (Ky. St. 1903, § 2505), which requires an action for the recovery of land to be brought within 15 years after the right to institute it accrues, and the champerty statute (Id. § 210), which provides that "all sales or conveyances * * * of any lands * * * of which any other person at the time of such sale, contract or conveyance has adverse possession shall be null and void," the elements constituting adverse possession are the same.

**3. SAME—EXTENT OF POSSESSION.**

An entry into possession of any part of a tract of land, under a deed containing specific metes and bounds and purporting to convey the same, gives constructive possession of the whole tract, if not in any adverse possession; and a continuation of such possession, although actually of only a part, but under claim of title to the whole, for the statutory period, will give the occupant title to the whole by adverse possession, at least against one out of possession who claims title to the entire tract through a single conveyance and source of title.

**4. SAME—SEPARATE TRACTS CONVEYED BY SINGLE DEED.**

A title founded on adverse possession under a deed which purports to convey the title is wholly independent of prior conveyances or of the grantor's actual title, and it is therefore immaterial whether his title to the whole was obtained from a single source or through separate conveyances of different parts of the tract.

**5. SAME—NOTICE OF EXTENT—RECORD OF DEED.**

The record of a deed under which the grantee has entered into possession is notice to the world of the extent of his possession.

**6. SAME—KENTUCKY CHAMPERTY STATUTE.**

One holding two adjoining tracts of land under separate patents took possession of one and made improvements thereon, and thereafter sold and conveyed all the land as a single tract to defendants, who leased the entire tract, and the tenant went into possession of the improved portion. *Held,* that defendants' possession through their tenant extended to all the land covered by their deed and lease, and that a subsequent conveyance to plaintiff by an adverse claimant was void as to the entire tract, under the Kentucky champerty statute (Ky. St. 1903, § 210), which provides that all conveyances of lands of which any other person at the time has adverse possession shall be void.

In  Error to the Circuit Court of the United States for the Eastern District of Kentucky.

¶ 1. State laws as rules of decision in federal courts, see notes to Griffin v. Overman Wheel Co., 9 C. C. A. 548;  Wilson v. Perrin, 11 C. C. A. 71;  Hill v. Hite, 29 C. C. A. 553.

130 F.—32

Wm. B. Dixon and J. F. Bullitt, for plaintiffs in error.

S. B. Dishman, D. D. Fields, and T. L. Edelen, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This is an action of ejectment brought by the Mineral Development Company to recover the possession of certain parcels of land in Letcher county, Ky. The defendants John S. and Mary D. Wentz claim to own the lands, and Scott and Raleigh were their tenants in possession of some of them. The plaintiff founds its claim of title upon a patent made by the state February 28, 1874, to William H. Nickels for a tract consisting of 34,800 acres of land in said county on a survey made by him in 1873. The tract so patented was on February 3, 1882, conveyed by Nickels to Joseph B. Altemus and William D. Jones, who, on December 7, 1883, conveyed the same to Altemus, Benson, and McGeorge upon a trust expressed in a contemporaneous instrument for certain named beneficiaries. In consequence of the resignation and death of trustees and the transfer of interests of the beneficiaries, the trustees and the beneficiaries on July 15, 1901, conveyed the tract to the plaintiff in this suit, a corporation organized under the laws of Virginia, and in exchange therefor the corporation issued its stock to the beneficiaries in the proportion of their respective interests and in an amount agreed upon. Claiming that these defendants were in possession of, and unlawfully withholding the possession of, parcels of the Nickels grant above mentioned, the plaintiff, on January 20, 1902, brought this suit.

The defendants pleaded to the jurisdiction that the conveyance to the plaintiff by the trustees, who had theretofore held title to the lands conveyed, was fraudulently made for the purpose of enabling the plaintiff to bring suit therefor in the United States court, which the trustees could not have done; it being further alleged that the cestuis que trust, by virtue of their stockholding interest, had resumed their relation to the property conveyed. They also filed an answer to the petition claiming title in John S. and Mary D. Wentz, and, further, that the defendants, and those under whom they claimed title, had been in adverse possession of the lands for more than 15 years prior to the commencement of suit, and also that the conveyance to the plaintiff of the lands was made while they were adversely held by the defendants or their grantors, and was therefore void for champerty. We take no notice of some preliminary pleadings, as they are not now material. Under the Practice Code of Kentucky the objection to the jurisdiction might properly have been incorporated in the answer. We so held in Roberts v. Langenbach, 119 Fed. 349, 56 C. C. A. 253. But, as the case was tried by a jury upon all the issues, the same consequences have resulted as if all the defenses had been joined in an answer. The jury, under the direction of the court, found that the plea to the jurisdiction was not sustained; that is to say, such is the effect of their verdict, although no separate verdict was taken on that issue, as should have been done in regular order. But in the result it is immaterial now that such practice was not pursued, and no question is raised upon it. We think

the court did not err in instructing the jury that the defense presented by the plea was not sustained. In support of it nothing was shown except the bare facts of the conveyance of the land to the plaintiff and the conditions of the transfer above recited. On those facts alone there would be no fair ground for the conclusion that the parties colluded to falsely create the appearance of jurisdictional facts, or that the legal effect of the transaction was such as to defeat the jurisdiction. But the trustees, who were called as witnesses, testified that the exigencies of the business to which the trust had relation suggested the transfer as a proper and advisable proceeding. We do not think that the facts are so nearly similar to those in the case of Lehigh Mining & Manufacturing Co. v. Kelly, 160 U. S. 328, 16 Sup. Ct. 307, 40 L. Ed. 444, to which reference is made, as to require a different conclusion from that which we have indicated.

The other issues concern the merits. Under the peremptory instruction of the court the jury rendered a verdict awarding some of the lands in controversy to the plaintiff and some to the defendants. The correctness of this instruction is the matter we have to determine. The defendants complain that by error of the court they have been deprived of several parcels of the land to which they had valid title by adverse possession, or that in respect to one or more the plaintiff was precluded by the statute of the state concerning champerty. The foundation of the defense arising upon adverse possession is the Kentucky statute of limitations, which provides that "an action for the recovery of real property can only be brought within 15 years after the right to institute it first accrued to the plaintiff, or to the person through whom he claims." Ky. St. 1903, § 2505. The right accrues when another person takes adverse possession of the owner's lands. Of course, if the adverse possession is not maintained for the period mentioned, the statute is inoperative, for it imports that there must be a continuous right of action during that period. Inasmuch as the Kentucky statute against champerty is involved in the controversy and will be referred to in the discussion of the effect of adverse possession, it is here quoted, as follows:

"All sales or conveyances, including those made under execution, of any lands, or the pretended right or title to the same, of which any other person, at the time of such sale, contract or conveyance, has adverse possession, shall be null and void." Ky. St. 1903, § 210.

It would seem that the adverse possession here intended is the same as that which, if continued for the requisite period, would give title under the operation of the statute of limitations above quoted. During the years 1900, 1901, and 1902 the plaintiffs in error John S. and Mary D. Wentz, defendants below, purchased and received conveyances of several contiguous parcels of land lying within the boundaries of the Nickels patent. One—and much the larger—tract, lying in the northeastern and eastern part of the entire tract purchased by them, was conveyed to them October 13, 1900, by J. J. Lewis by deed of that date. On December 10, 1900, they acquired by deed from D. M. Collier another parcel adjoining that purchased from Lewis, and lying in the northwestern part of their whole tract. On January 2, 1902, they purchased of Hiram Raleigh and received his deed for another parcel ad-

joining that purchased of Lewis, and lying on the south side of the western portion thereof. Meantime, on December 20, 1901, they had purchased from A. J. Crager a parcel lying next west of the Raleigh parcel, and took his deed therefor. These Raleigh and Crager lands occupied the southwestern part of their entire tract. At the time Nickels obtained his patent for the 34,800-acre tract several prior patents had been granted by the state for different parcels of the tract patented to him, and to which his patent therefor conveyed no title. When Lewis acquired his title to the western portion of the land deeded by him to John S. and Mary D. Wentz, which was in 1883, a considerable part thereof was, and for a long time had been, settled upon and cultivated by his grantors and those under whom they claimed title. One of the patents above mentioned, older than that to Nickels, covered a strip or parcel which, in one side of it, included a part of the settlements just mentioned. On getting his deed in 1883 Lewis extended the occupation and improvement of the land deeded to him on the parcel covered by the old patent, and also on the land not covered by it, but covered by the Nickels patent, and lying on that side of the old patent beyond which the older settlements extended. Evidence was adduced at the trial tending to show that Lewis, claiming title to the extent of the boundaries of his deed, had continued and extended the actual occupancy of the land within the limits of the old patent, and on that side of it where the old improvements had been made, from 1883 until 1900, when he deeded to the Wentzes, and that they continued the occupancy until the commencement of this suit. Neither Lewis nor the Wentzes had occupied or improved any portion of the land lying on the other side of that covered by the old patent above mentioned.

The court below was of opinion that, while the adverse possession shown of the land lying on that side of the older patent on which the actual occupancy and improvements were made entitled the defendants to maintain their defense as to all the lands on that side and within the boundaries of the deed to Lewis, yet, as that portion was cut off from the other part of the land covered by that deed by the intervening older patent which prevented the Nickels patent from attaching to the land covered by said older patent, such occupancy on one side of the old patent would not extend the possession to that part of the land included in the deed to Lewis over and beyond the older patent. The court did not say so in terms, but that is the plain inference from its instructions to the jury, which were to find a verdict for the defendants for the land on the one side of the old patent and for the defendants on the other.

In this, we think, there was error. It is apparent from the decisions of the highest court of Kentucky that, on account of the mischiefs which had ensued from the loose and indiscriminate practice which had prevailed of patenting lands in that state without taking the necessary precautions to ascertain whether they had been patented before, and the chaotic condition of land titles which had resulted therefrom, that court has given a liberal interpretation of the statutes above mentioned in respect of the adverse possession therein intended in favor of actual settlers with a view to quieting titles. The decisions of that court in respect to this subject have become rules of property, and the statutes

as expounded and applied by the court furnish the governing law for the federal courts. Elder v. McClaskey, 70 Fed. 529, 17 C. C. A. 251. It is the settled law not only in Kentucky, but elsewhere, that an entry into possession of a tract of land under a deed containing specific metes and bounds and purporting to convey the same gives a constructive possession of the whole tract, if not in any adverse possession. Ellicott v. Pearl, 10 Pet. 412, 9 L. Ed. 475. And it is equally well settled that such an entry upon some part of the land purporting to be conveyed followed by a continuous adverse possession, though it may be actually of such part only, under claim of title to the whole tract, will, if prolonged for the period prescribed by the statute of limitations, give to the occupant a title superior to that of the original owner. The Kentucky Court of Appeals holds that, in order to prevent the application of this rule, the adverse possession of another must be that of one holding title, and that the limitation is not made in favor of strangers to the title. Bush v. Coomer, 69 S. W. 793, 24 Ky. Law Rep. 702. In the present case it is not claimed that any one in the chain of the plaintiff's title was ever in actual possession of any part of the land covered by the Nickels patent. That qualification of the rule may therefore be eliminated; and it must follow that the entry of Lewis upon the land described in his deed under claim of the title which it purported to convey gave him possession of the whole tract covered thereby, unless there was some obstacle arising from the previous condition of the title to the land or some part of it. But how could any such obstacle arise? The claim is against all the world. The deed and the entry thereunder are the foundation of the title accruing to the claimant if he maintains his possession under his claim for the requisite period. It is immaterial for this purpose what the title of his grantor was, or from how many persons, or in what parts or interests, it was acquired by the grantor, or, indeed, whether he ever acquired any title to any part of the land. It is all one to the grantee to whom the deed assumes to convey the title. His reliance is on what his deed purports to convey to him, and his position is against everybody else, including his own grantor, unless some special fact is shown which qualifies the purpose of the grantee in taking and maintaining the possession.

In Elder v. McClaskey, supra, a deed under which possession had been taken and held purported to convey the entire estate, though it did not in fact, for the grantor had only a part interest therein; and it was contended that the adverse possession was qualified thereby. But Judge Taft, who delivered the opinion of the court, said:

"It is immaterial that the fee-simple deeds under which the entries were made actually vested only the title to a life estate, or an undivided interest. The extent of the interest purporting to be conveyed characterizes the entry and subsequent possession, and shows beyond doubt that they were made under a claim to the whole, and with intent to oust all others asserting an interest. This is well-settled by federal and state authorities."

And a number of cases are cited in confirmation of his statement. That in such cases the grantee is not affected by anything behind his own deed is confirmed by the rule that he holds adversely to his grantor. It was so held in Elder v. McClaskey and cases there cited. Clymer's Lessee v. Dawkins, 3 How. 690, 11 L. Ed. 778; Croxall v. Sher-

rerd, 5 Wall. 287, 18 L. Ed. 572; Merryman v. Bourne, 9 Wall. 600, 19 L. Ed. 683; Bybee v. Oregon & Cal. R. R. Co., 139 U. S. 681, 11 Sup. Ct. 641, 35 L. Ed. 305.

In Watkins v. Holman, 16 Pet. 25, 54, 10 L. Ed. 873, Mr. Justice McLean, after stating the rule as elsewhere held, said:

"In Kentucky it is well established that a purchaser, who has obtained a conveyance, holds adversely to the vendor, and may controvert his title. Voorhies v. White's Heirs, 2 A. K. Marsh. 27; Winlock v. Hardy, 4 Litt. 274. And this is the settled doctrine on the subject."

In Merryman v. Bourne, 9 Wall. 592, 19 L. Ed. 683, Mr. Justice Swayne, referring to those who had been in adverse possession, and the principle by which a lessee is estopped, said:

"How many such parties were in possession, what portion of the premises their possession embraced, and whether their possession under Fulton was as vendees, lessees, or otherwise, does not appear. If they were grantees in fee, the principle relied upon has no application. It is one of the incidents of subinfeudation, and was brought into the common law from the feudal system. It does not reach the relation of vendor and such a vendee. The latter holds adversely to all the world, and has the same right to deny the title of his vendor as the title of any other party."

These cases prove how absolutely independent of previous titles is that which is built up by an adverse entry, followed by continual possession under color of title by a deed which purports to convey it. Of course, we are not now speaking of those cases where the deed received and the entry made are affected by a trust or some duty owing to the grantor by reason of some fiduciary relation. If this be so, it is difficult to see how the entry of Lewis into the land covered by his deed under a claim of right to the whole tract and his maintenance of the possession so taken for more than 15 years could be affected by showing how or by whom the different parcels were previously held. The suggestion is that the Nickels patent while it professed to be for the whole tract of 34,800 acres, was, in effect, a conveyance only of what was left after satisfying previous patents located in the midst of it; that, therefore, the land covered by the old patent within the bounds of the deed to Lewis was not in fact the land of those claiming under the Nickels patent, but that of a stranger; and that possession taken of that was not notice to them of the assertion of a claim of right to any part of their land. But the fact is that Nickels himself and those deriving title from him were always claiming the whole tract covered by his patent, and it was so, by the terms of the deed, conveyed to the plaintiff in July, 1901; and it would seem there is scant ground for the complaint that the predecessors of the plaintiff were not affected with notice by reason of the fact that on the reduction of their claim to its valid limits they are obliged to yield to an older patent this parcel inside the Lewis tract. Such a proposition as this would seem to be wholly inconsistent with the elementary principles applicable to the subject. But we will decide no more than is necessary to the present purpose. Actual possession was taken by Lewis not only within the limits of the old patent, but also of parts of the Nickels tract within the bounds of that patent. The owners of that title were thereby warned that Lewis was claiming some of their land, and they were thereby put upon inquiry as

to what his claim was. The most reliable and certain sources of information were Lewis himself or the record of his deed, either of which would have disclosed the extent of the claim under which he had entered and was maintaining adverse possession. That deed had been on record in the county registry 17 years when this suit was commenced. In Clymer's Lessee v. Dawkins, 3 How. 674, 11 L. Ed. 778, it was held that partition proceedings of land held in common, on file or of record in the office of the clerk of the county court, was of a sufficiently public character to charge the other tenant in common with notice, though he was not a party thereto. Such inquiry, made by the plaintiff's grantor, would have shown to them that his deed covered not only their land on that side of the old patent on which his actual occupation was taken, but also the parcel covered by the old patent, but claimed by them, and their land beyond, and that his possession was adverse to all concerned, whether themselves, the owners of the older patent, or anybody else. They were bound to know that the effect of an entry so taken would not be altered by the fact that the land covered by the deed under which the entry was made had been owned or claimed in severalty by different individuals. The deed to Lewis, which covered the land in question, was of a single tract, and not of parcels. His claim was not one thing in one place and of another sort in another place, but it was one claim over the whole tract; and his entry was by construction of law coextensive therewith, and had identical effect in all parts of the land covered by the deed. The claimant is not, without clear proof, supposed to have investigated the titles to the several parts of his purchase, and regulated his conduct and purpose by reference thereto, intending perhaps an adversary position as to some and a subordinate one as to others, for that would be an extraordinary case.

In Ellicott v. Pearl, 10 Pet. 412, 9 L. Ed. 475—a case involving the title to land in Kentucky—the possession relied upon by the defendant was one taken by him under a deed of 7,000 acres, which included two contiguous tracts covered by separate patents of 2,000 and 1,000 acres, respectively. He took actual possession of one of them; that is to say, he settled upon and occupied a part of it. It was contended that such settlement and occupation of that tract was not an adverse entry and possession of the other tract. Mr. Justice Story, in his opinion, pointed out that the deed to Pearl was of the whole tract of 7,000 acres by metes and bounds, and that "the law construes the entry to be coextensive with the grant to the party upon the ground that it is his clear intention to assert such possession"; and then, in reference to the contention of the plaintiff above stated, said:

"If the possession intended was that of Pearl, as both tracts were within his tract of 7,000 acres, it is clear that his possession would extend over both tracts upon the principles already stated."

The plaintiff, in his request for instruction, had also contended that a possession of the other included tract by a settlement thereon under the title of Pearl would not be an adverse possession of the first. After disposing of this contention, the learned justice further said:

"In truth, the instruction asked seems to have proceeded upon a ground perfectly untenable in itself, and that is that as to third persons, who are in under title or color of title, their possession is to be bounded and limited by

the nature and extent and origin of the distinct titles of their adversary, and not by that under which they themselves have entered and taken possession."

It is proper to observe in this connection that the petition of the plaintiff avers that the defendants are in possession of this land in dispute, and proof of the averment was necessary to its recovery. As their possession was but the continuation of that of Lewis, it is clear that the plaintiff must rely upon the proposition which it now disputes that the entry and possession of Lewis extended over the parcel in dispute.

The decisions of the Court of Appeals of Kentucky give full recognition to these principles as the foundations of the law of that state upon this subject. They are too numerous to be separately discussed. Several of the earlier cases are referred to in Ellicott v. Pearl, supra, and shown to be in accord with the principles there announced; to which we add: Calk v. Lynn's Heirs, 1 A. K. Marsh. 346; Taylor v. Cox, 2 B. Mon. 430; Smith v. Frame, 3 A. K. Marsh. 231; Campbell v. Thomas, 9 B. Mon. 82; Beeler v. Coy, Id. 312; McLawrin v. Salmons, 11 B. Mon. 96, 52 Am. Dec. 563; West v. McKinney, 92 Ky. 638, 18 S. W. 633; Bush v. Coomer, 69 S. W. 793, 24 Ky. Law Rep. 702; Altemus' Assignee v. Potter, 69 S. W. 1083, 24 Ky. Law Rep. 795; Kirby v. Scott, 73 S. W. 749, 24 Ky. Law Rep. 2175. Some of these cases are cited by both sides in support of opposite contentions. But it is apparent that there has been little deviation in respect to the principles which dominate the question we are now considering, however they may have been applied in particular cases.

A case upon which much reliance is placed by counsel for plaintiff is that of Smith v. Frame, 3 A. K. Marsh. 231. It appears that Smith held a deed for two tracts of land of 400 acres each, adjoining each other, and for each of which his grantor had taken separate patents of different dates. A senior patent underlaid the patent for one of these tracts throughout nearly its whole extent. Frame held under a deed which included a strip off one side of both the Smith tracts, one part of which strip extended over the senior patent above mentioned. On this extension Frame made entry and improvements, and had lived there for more than 20 years. But he never actually entered with intent to take possession upon that part of the land deeded to him which was part of the other tract of Smith, and the question was whether his possession on the 400-acre tract which was underlaid by the senior patent should be extended to that part of the land in the other 400-acre tract covered by his deed, but upon which he had made no entry. The court held that it should not. The reason assigned was that the entry and possession of Frame was only upon land of which Smith had no title, but which belonged to the owner of the senior patent, and not at all upon Smith's other tract, which he did own. It does not appear whether Smith had ever asserted title to the land underlaid by the senior patent, or made any such entry or held any such occupation as would constructively extend his possession over both tracts. But whether he did or not, the essential difference between that case and this remains that there was no actual possession taken of any portion of the land of which Smith had title, while here the possession of Lewis included land of which the plaintiff or its grantors did have title, and that is the same title upon which it now seeks to recover.

Another case which is cited for the plaintiff to support the ruling of the Circuit Court is that of West v. McKinney, 92 Ky. 638, 18 S. W. 633. The heirs of McKinney brought an action to obtain possession of a piece of land lying within the boundaries of a large survey consisting of 18,000 acres. He had never obtained any patent, but had entered upon and maintained possession of a small part thereof. Much of the 18,000 acres had been sold in parcels scattered through the survey, and were owned and occupied by the owners in such manner as to leave the unused parts dissevered from one another. West had entered upon one of these parts, and held possession under claim of right to the extent of the boundaries of that part. The plaintiffs relied upon the entry by their ancestor and his occupation of a part of his survey as extending over every one of the dissevered parcels including that of West, and the lower court so held. But the Court of Appeals reversed the judgment, and in stating the grounds of its decision said, "No patent or deed that would bring to the plaintiffs a constructive possession being exhibited, an actual possession must be shown," and it was held that, as there had been no such possession, there had been no ouster by the defendant, and nothing to prevent his occupation from extending to the limits of his boundaries. But here, as has already been stated, Lewis entered under a deed, and he had not conveyed the intervening parcel, but held and occupied it himself. If he had no deed, and the intervening parcel had been owned and occupied by others, a very different case would be presented. These are the most relevant Kentucky cases of those which are relied on by the plaintiff. We think they are not in conflict with the principles which should govern our decision.

Counsel for plaintiff (in the court below) place much reliance upon the case of Carter v. Ruddy, 166 U. S. 493, 17 Sup. Ct. 640, 41 L. Ed. 1090, as supporting their contention that, where the land adversely held consists of several parcels, the possession of one will not be extended to the others. But an examination of that case shows that it is not inconsistent with the rule as we have stated it, but is in accord with it. The deed under which the adverse possession was claimed to have been held described the land as a block consisting of 24 lots of certain described dimensions and locality, and there was evidence that these lots had been marked out on the ground, and that the plaintiff, who was grantee, had occupied some of them, but not the lot in controversy. The court had charged the jury that, if the plaintiff held the land as one tract or parcel, his possession of one or more lots would give him possession of the entire tract, but if it was cut up into separate lots, and so marked upon the ground, and was held and treated as distinct tracts, possession of all of them must be shown. The jury having found the latter to be the case, the court, approving the instructions, affirmed the judgment.

It is of little or no consequence that parts of the Lewis tract were known and called by particular names, or that they had at some time been possessed by different persons. They were none the less one tract when deeded to Lewis.

In dealing with this portion of the Lewis tract in controversy, if we understand the facts correctly, what we have said with respect to the consequences of the adverse possession of Lewis is sufficient to dispose

of that part of the controversy, and we shall not consider the other ground of defense.

With respect to that part of the tract conveyed to the defendants Wentz by D. M. Collier and wife on December 10, 1900, which is involved on this writ of error, the facts are that the conveyance was of the whole tract by metes and bounds, and not in parcels. The deed was recorded in the clerk's office on the 29th of the same month. On February 1, 1901, the grantees in that deed made a lease of the whole tract covered by that deed to Winfield Scott for the term of one year, and at the expiration of that lease they, on January 1, 1902, gave him another lease of the same premises for the year 1902. This Collier tract, prior to his deed to the defendants Wentz, had been held by Collier claiming under two patents, one for the northern part and the other for the southern part. These patents were junior to the Nickels patent. He had occupied the southern part for more than 15 years, and this was awarded to the defendants by the verdict and judgment of the lower court upon the effect of Collier's adverse possession. But it does not appear that Collier actually occupied the northern part, which is the parcel here in controversy. On getting his lease of February, 1901, Scott, claiming to the extent of the boundary of his lease, entered thereon, and continued the actual possession of Collier on the southern part. We shall not consider the effect of Collier's adverse possession of the southern part upon the title to the northern part. And the question is whether the grant of Collier to the defendants Wentz of the entire tract followed by the entry and actual occupation by their lessee, Scott, upon the southern part, worked a disseisin of the whole tract, so that they were in adverse possession of the whole thereof at the date of the deed to the plaintiff in July, 1901. If they were, the deed was void as to this land under the champerty act. If, as has been repeatedly held, the defendants Wentz, grantees of Collier, had no concern with the manner in which Collier had acquired his paper title, or the validity thereof, it was immaterial whether he held the tract he assumed to convey under one patent or under several. The Nickels patent, under which the plaintiff claims, covered the whole tract. So did the deed from Collier. If Collier had never had any color of title, nor any possession, the entry of the defendants and taking adverse possession of part would be an ouster of the land covered by their deed. For the present purpose the previous possession by Collier of the southern part is wholly immaterial. This part of the controversy is completely governed by the rule affirmed in Ellicott v. Pearl, to which we have referred in dealing with the Lewis tract.

Then, as to the Raleigh tract, it appears that it was deeded by Raleigh to the defendants Wentz January 2, 1902, which was later than the deed of the Nickels title to the plaintiff. The plaintiff's deed was therefore not void by reason of any adversary possession of those defendants. But it is claimed that the parcels of this tract which are now in question were at the date of the plaintiff's deed in the possession of Raleigh, and that the deed was for that reason void. In determining the nature and effect of the adverse possession of Raleigh, we have not the same conditions as we had in respect to the Lewis and Collier tracts —that is to say, not in all the parcels claimed by the defendants in that

tract—for Raleigh did not acquire all the lands included in his deed to the defendants by the same grant as Lewis had done when he took his deed, or the Wentzes when they took their deed from Collier, but in different parcels. But as to one of these parcels, which was covered by a patent to him for 75 acres in 1885, upon which he had made entry and occupied in part continuously since, the court held that, because there was an older patent covering the other part, or an intervening portion of it, Raleigh's possession did not extend beyond the part covered by his patent which was not covered by the older patent. But Raleigh's patent was upon a definite survey. There was no adversary possession, and his entry and possession were under claim of title to all that his patent covered. We think his entry and possession extended over the whole, upon the principles hereinbefore stated, and certainly so as against the plaintiff, who did not connect itself with that earlier patent, which was also earlier than its own.

It also appears that Raleigh had taken out another patent in 1891 for a 50-acre tract, a portion of that conveyed by him to the defendants Wentz. There was no adverse possession of this for a sufficient period to gain title. Whether there was any adverse possession which would render void the deed to the plaintiff for champerty is not clear. If there was, the plaintiff could not recover it for lack of title. If there was not, we see no reason why they should not recover. Their petition avers that the defendants were in possession. But this might be so in 1902, and not in 1901, when plaintiff took its deed. As there must be a new trial, it will be sufficient to indicate, as we have, the principles by which the right to recover this parcel will be governed.

The judgment must be reversed, with costs, and a new trial awarded.