## TAYLOR & CRATE v. ASHER et al.

(District Court, E. D. Kentucky. August 18, 1916.)

1. **Landlord and tenant ⬅➡56(2)—Possession of those replacing tenants induced to vacate by adverse claimant held possession of landlord.**

    Where the premises in dispute had been in the possession of plaintiff through numerous tenants, when defendant entered on the land and induced two of those tenants to leave, replacing them with two others, who were acting on defendant's behalf, the possession of the two replacing tenants was still the plaintiff's possession.

2. **Adverse possession ⬅➡100(1)—Possession by tenants who replaced plaintiff's tenants is limited to houses occupied.**

    Where plaintiff, who claimed a large tract of land under deeds of conveyance, had been in possession thereof by numerous tenants, when defendant entered the premises, induced two of the tenants to leave, and replaced them by two who were acting in defendant's interest, the possession of the two new tenants, if it inured to the benefit of the defendant, was limited to the houses occupied by them, and did not extend to the timber on the tracts.

3. **Injunction ⬅➡52—Person out of possession may be restrained from cutting timber.**

    One in possession of a tract of land, claiming to be the owner, may enjoin one out of possession of the land from cutting and removing the timber, which constitutes the chief value of the land, and compel him to account for the timber already cut, since there is no adequate remedy at law.

4. **Adverse possession ⬅➡101—Possession by grantee under several deeds to contiguous tracts of any portion of boundary is sufficient.**

    Where plaintiff had acquired his claim to the land in controversy by deeds to several contiguous tracts which together formed one tract, his possession of any portion of the land within the boundary gave possession of the entire tract under the law of Kentucky, and was not limited to the portion of it described in the deed conveying the part actually possessed.

5. **Adverse possession ⬅➡100(1)—Possession of vacant land extends to well-defined boundary, if claimed.**

    One who enters on the land in dispute, not then in the actual possession of the owner, claiming it to be a well-defined boundary, acquires adverse possession to the full extent of the boundary.

In Equity. Suit by Taylor & Crate, a corporation, against A. J. Asher and others. Decree for permanent injunction, granted to plaintiff.

William Ayres, of Pineville, Ky., Edward R. Bosley, of Buffalo, N. Y., William Low, of Pineville, Ky., and W. B. Dixon, of Louisville, Ky., for plaintiff.

T. L. Edelen, of Frankfort, Ky., W. O. Davis, of Lexington, Ky., and Martin T. Kelly, of Frankfort, Ky., for defendants.

COCHRAN, District Judge. This cause is before me for final decree. The plaintiff claims to own a tract of land on the waters of Straight creek, in Bell and Harlan counties, in this district, containing

5,568 acres. This tract at one time consisted of 25 or more separate and distinct tracts, claimed to be owned by different persons. In 1889 and 1890 Berry Howard and the Jones Lumber Company purchased them from these claimants. The money to make the purchases was furnished by a partnership, whose firm name was the same as that of plaintiff and whose members became its stockholders, and subsequently the title so acquired passed by deeds from the purchasers through such partnership to plaintiff. The deed to plaintiff for the main portion of the land was made in 1900 and for the rest in 1904. The claimants from whom Howard and the Lumber Company purchased claimed under certain patents from the commonwealth of Kentucky. Upon the acquisition by these purchasers of these separate and distinct tracts, automatically they became a single large tract. They lay contiguous to one another, and then came into one ownership, were purchased with the view of being treated as a single tract, and were thereafter. It was known in the neighborhood as the Taylor & Crate land and from 1902 it was extensively logged by plaintiff as one body of land.

There is evidence tending to show that, at the time these separate tracts come into the one ownership, the outside boundary of them, treated as a whole, was marked; but, whether such was done or not, it, from that time, had an outside boundary which was marked and well-defined, made up of the outside boundaries of the parcels on the outside. But no description of such outside boundary was obtained until just shortly before the bringing of this suit, when a survey was made for that purpose, and it is described by that boundary in the bill herein. In the deeds from Howard and the lumber company to the partnership, and from it to plaintiff, and in such leases as were made, of necessity the land was described by the separate boundaries. There was no description of the single boundary of the entire body of land in existence to be used.

Of this land 468 acres in different parcels were cleared land. From the purchase by Howard and the lumber company down to January 28, 1910, when that out of which this litigation has arisen began to be done, continuously, they and their successors, the partnership of Taylor & Crate and plaintiff, had tenants—according to plaintiff's claim from 5 to 10—living on the land, and on that date plaintiff had as many as 14 tenants so living. In 1906 the defendant A. J. Asher obtained a deed for the land, covered by a patent for 100,000 acres of land, which emanated from the commonwealth of Kentucky to Boyd Dickerson on a survey made March 4, 1845, from the parties owning the patent. This patent was senior to all the patents under which the grantors in the deeds to Howard and the lumber company claimed, except one or two, which covered only a small portion of the lands thereby so conveyed.

Having reached the conclusion that this patent covered the bulk of the tract of land claimed by plaintiff—i. e., all except a small portion on its west side—and that by reason of its seniority he was owner of the bulk thereof, said defendant determined to assert his right of ownership out of the courthouse. He caused a body of men to enter upon the land to procure from the plaintiff's tenants living on portions

thereof claimed by him a surrender of their possessions to persons acting for him, by offering them money and leases upon lands owned by him. This entry was made on January 28, 1910, and on that and the next day these men succeeded in this way in getting two of plaintiff's tenants to so do.

One of these was the defendant Ephraim Thompson, who lived on the head of Baker's branch of Stony fork of Straight creek, and the other the defendant Thomas Farrell, who lived at the mouth of Coon branch of Stony fork. The defendant A. B. Asher, a brother of the defendant A. J., moved into the Farrell house, and the defendant Grant Sizemore moved into the Thompson house. These two, in so doing, were acting on behalf of the defendant A. J. Asher. Thereupon he, with a large force of men, including his codefendants, commenced to cut and make into staves the oak timber on the land, and had succeeded in so doing as to about 200 trees, when, on March 4, 1910, this suit was brought.

The relief thereby sought was an injunction against the further cutting and removing of timber from the land, and for an accounting for that already cut. An injunction was also sought against interfering with the other tenants of plaintiff on the land, and from the surrender of the possession of such portions thereof as had been obtained in the manner stated to others than plaintiff.

The first question presented for determination is as to the court's jurisdiction of the case. It was raised on demurrer to the bill, and it is strenuously urged on behalf of the defendants that this is not a case for the interposition of a court of equity. The sole basis of the position is that the defendant A. J. Asher was in possession at the time the suit was brought of at least the two houses occupied by the defendants A. B. Asher and Grant Sizemore. It may be conceded that a court of equity is without jurisdiction to enjoin one in possession of land, chiefly valuable for its timber, from cutting and removing same at the instance of one claiming the land, unless such claimant has first brought an action at law to recover the possession of the land, in which case a suit in equity may be brought, as ancillary thereto, to enjoin the cutting and removing of the timber pending the action at law. Such may be said to be the effect of the decision in the case of Erhardt v. Boaro, 113 U. S. 537, 5 Sup. Ct. 565, 28 L. Ed. 1116.

[1, 2] But here the defendant A. J. Asher did not acquire the possession of these houses by the surrender of possession by Farrell and Thompson to Asher and Sizemore. The possession of Asher and Sizemore was still plaintiff's possession, just as much so as that of Farrell and Thompson had been before the surrender. This position is supported by these decisions cited by plaintiff's counsel, to wit: Phillips v. Rothwell, 4 Bibb (Ky.) 33; Hoskins v. Helm, 4 Litt. (Ky.) 309, 14 Am. Dec. 133; Turner v. Thomas, 13 Bush (Ky.) 518; Ratcliff v. Belfonte Iron Works Co., 87 Ky. 560, 10 S. W. 365. And even if such possession, so acquired, inured to the benefit of the defendant A. J. Asher, it was limited to the houses. He did not thereby acquire possession to any further extent.

[3] The suit, then, is a suit by one in possession claiming to be the owner against one out of possession, to enjoin him from cutting and removing the timber, which constitutes the chief value of the land, and to make him account for the timber already cut. This presents a well-recognized case for equitable relief. There is no adequate remedy at law. A court of law cannot in any way prevent the destruction of property. It is so well recognized that no citation of authority is needed. In the case of Peck v. Ayers & Lord Tie Co., 116 Fed. 273, 53 C. C. A. 551, such relief was granted, though the plaintiff was not in possession; but neither was the defendant. There is no case where a court of equity will not grant such relief. It will even grant it where the defendant is in possession, but only as ancillary to an action at law to recover the possession. I do not find it necessary to distinguish the cases relied on by defendants from the one in hand. They distinguish themselves.

I come, then, to the merits. The plaintiff questions whether the Dickerson patent covers more than about 40 acres of the land in dispute. This is a very interesting question, but I do not feel called on to decide it. I will do no more than to say that it seems to me that the only possible locations are the one claimed by plaintiff and the one suggested by defendants, which calls for reversing the ninth, eighth, seventh, and sixth lines until you come to Cumberland river, and then crossing that river with the fifth line, and that of the two plaintiff's is the more plausible. I do not feel called on to decide this question, because I am constrained to hold that, even if the true location thereof is as claimed by defendants, the plaintiff and not the defendant A. J. Asher is the owner of the whole of the land in dispute. It is possible to make this out in two ways. One is that the Dickerson patent, so far as it covers the land in dispute, is a junior patent, and the defendant A. J. Asher, therefore, having no right whatever therein, the mere possession on the part of plaintiff constitutes it the true owner as against the defendant. It is clear that it is junior as to the larger portion of the land in dispute, even if defendants' location of the Abraham Morehouse patent be the true one. It is junior as to so much thereof as is north or northwest of the last or south line of the Ben Say patent, the location of which must be accepted as claimed by the plaintiff; and it is junior as to so much thereof as would be covered by the Joseph Carey 5,000-acre patent, on the basis that defendant's location of the Morehouse patent were the true one.

Defendants' location of the Carey patent, in relation to the Morehouse patent, is an impossible location. It calls for its first line to run with the fourth or east line of the Morehouse patent, and the Joseph Carey 10,000-acre patent and the Freeman patent, which also bind on that line, call for the Joseph Carey 5,000-acre patent. But the plaintiff has the best of it on the location of the Morehouse patent. The evidence is persuasive that the "noted large encampment" called for near the fourth corner was where plaintiff claims it to have been. The testimony as to the statement of William C. Farmer was competent, and it has the ring of truth in it. The place was suitable for an encampment. That claimed by defendants was not suitable. The testi-

mony tending to support it is subject to serious criticism. It is based largely on the statements of two persons, now dead, who in their lifetime denied ever having heard or known that an encampment was located where defendants claimed it to have been. The plat favors defendants' contention somewhat, but plaintiff's location "more nearly harmonizes all the calls and the objects of the grant."

But I do not base my holding that the defendant A. J. Asher has no interest in any part of the land in dispute on this position, but on the other possible way to make this out. It is that such interest as he may ever have had therein; as well as any interest therein on account of such senior patents as there may have been covering any portion of the land in dispute, had been, prior to January 28, 1910, barred and vested in plaintiff by 15 years' continuous adverse possession on the part of plaintiff and those under whom it claims, and in 1906, when the defendant A. J. Asher acquired the Dickerson title, it was in the adverse possession thereof, and the deed to him was therefore champertous. As to this I have not the slightest question. It is clear that there was a continuous adverse possession, through tenants living on the land, for more than 15 years before January 28, 1910, on the part of plaintiff and those under whom it claims. It is not essential that there should have been a continuous adverse possession for that time at any particular place on the land. It is sufficient that there was continuously for that length of time an adverse possession somewhere within the boundary. That there was is without doubt.

[4] It is not contended otherwise by defendants. Their main, if not only, contention here, is that there had to be such an adverse possession; i. e., continuously for 15 years, on each of the separate tracts of which the boundary was made up, in order to bar the defendant A. J. Asher's right in such tract. Decisions from other jurisdictions are cited in support of this position. But they are of no value in this state. Such is not the law of this state. The following decisions of the Kentucky Court of Appeals are relied on as justifying such a position, to wit: Interstate Investment Co. v. Bailey, 93 S. W. 578; Brown v. Wallace, 116 S. W. 764; Bowling v. Breathitt Coal, Iron & Lumber Co., 134 Ky. 249, 120 S. W. 317; Whitley County Land Co. v. Powers' Heirs, 146 Ky. 801, 144 S. W. 2; Burt-Brabb Lumber Co. v. Sackett, 147 Ky. 232, 144 S. W. 34; Louisville Property Co. v. Lawson, 156 Ky. 288, 160 S. W. 1034; Frazier v. Ison, 161 Ky. 379, 170 S. W. 977. But these decisions do not so decide. Nor is there anything in them tending to uphold the position. They simply decide that one in possession of land which he owns does not acquire possession, by reason thereof, of an adjoining tract of land upon obtaining a grant therefor, and the true owner thereof will not be barred of his right thereto, no matter how long such possession of the original tract with claim of ownership of the adjoining tract may continue. The court, in so holding, merely applied the doctrine of the early case of Trimble v. Smith, 4 Bibb (Ky.) 257, repeated in many subsequent decisions. That doctrine is that one gets no possession of another's land by merely claiming it. The only way to acquire possession thereof is by entering on it. In those cases the claimant had made no entry on

the adjoining tract. He continued to live on the land to which he had title, which was not claimed by the owner of the adjoining tract, and did no more than claim such tract. It may be noted, in passing, that in the case of Burt-Brabb Lumber Co. v. Sackett it was held that an entry by an adverse claimant on one of two disconnected tracts under a deed covering both does not acquire possession of the other, as was held in the case of Scott v. Mineral Development Co., 130 Fed. 497, 64 C. C. A. 659.

[5] But no such question as that is here either. The question we have here is as to the extent of the possession acquired by an entry of an adverse claimant on another's land. As a corollary to the position that an adverse claimant cannot acquire possession of another's land by merely claiming it, he can only do so by entering on it. It was laid down in those early decisions that, if he does enter on the land, and the owner thereof is not in possession, he acquires adverse possession to the full extent of his claim, if he claims to a well-defined boundary, whether defined by the deed under which he enters, or, if he enters under no deed, by being well marked. That is the case we have here. The plaintiff and those under whom he claims entered on the land in dispute, claiming it to a well-defined boundary, and, so doing, they acquired adverse possession to the full extent of the boundary. This defendants concede would have been true, if the land had been described by one single boundary, as in the bill herein. They contend that, as it was not so described, but by the separate boundaries by which each tract was described before they came into the one ownership, an entry within one of these separate boundaries extended the possession to such boundary, and no further. This position, as stated, has been upheld in other jurisdictions, but, as further stated, it is not the law of this state. Calk v. Lynn. 1 A. K. Marsh. (Ky.) 346; Parsons v. Dills, 159 Ky. 471, 167 S. W. 415. In Calk v. Lynn, Judge Boyle said:

"In the case of Fox v. Hinton, 4 Bibb, 559, it was held that, where there were two interfering patents, an entry under the junior patent on a part of the interference, with an intention to take possession of the whole, gave to the person making such entry the possession of the interference, to the extent of his claim. And the only circumstance which can distinguish that case from the present is that the defendant in this case claims two surveys or parcels of land, instead of one, as was done in that case. But in principle that circumstance can make no difference. For if, where a man's tract consists of a single parcel, he can, by entry upon a part, acquire the possession of the whole, we can perceive no reason why he may not, by entering upon one parcel, where his tract consists of several adjoining parcels, acquire the possession of the whole."

## And in Parsons v. Dills Commissioner Clay said:

The "appellants further contend that the proof of adverse possession is altogether insufficient. This contention is based on the assumption that where a deed conveys several tracts by separate descriptions, and not by one complete boundary, possession of one of the tracts for the statutory period is not a possession of the other tracts embraced in the deed. For this position there is respectable authority. 1 R. C. L. 'Adverse Possession,' § 45; Hornblower v. Blanton, 103 Me. 375, 69 Atl. 568; 125 Am. St. Rep. 300; Carson v. Bennett, 18 N. C. 546, 30 Am. Dec. 143; Loftus v. Cobb, 46 N. C. 406, 62 Am. Dec. 173. However, in this state, where because of peculiar conditions the plea of ad-

verse possession is regarded with more favor, that rule does not prevail. The deed, though invalid, is evidence of the extent of possession. Where, therefore, the tracts, though separately described, are conveyed by the same person and embraced in the same deed, and are contiguous to each other, adverse possession of one of the tracts for the statutory period will extend to the whole. The owner or tenant holding under him may also move from one tract to another described in the particular deed, and the different periods of possession, just so they be continuous and aggregate 15 years, will constitute adverse possession of all the tracts described in the deed."

The modification of the opinion on petition for rehearing in Logan v. Williams, 160 Ky. 641, 170 S. W. 22, to no extent qualified the decision in Parsons v. Dills. The statement withdrawn was not necessary to the decision of the case and might lead to confusion. There is, therefore, no escaping the conclusion that plaintiff was the owner on January 28, 1910, of the land in dispute by adverse possession. It is equally true that, if such were not the case, the defendant A. J. Asher took nothing by the deed under which he claims, because plaintiff was then in the adverse possession of the entire land in dispute.

This case has been elaborately prepared and argued, and this opinion is possibly a poor response to the efforts of counsel, in that it goes so little into detail. But the case has been so long under submission —I have been driven from it, as it were, by reason of the size of the record and the many questions in it and press of other matters—that I do not feel justified in holding it longer to deliver a more elaborate opinion. Suffice it to say, I have considered all the questions in it carefully, and have no hesitancy in reaching the conclusion that the plaintiff is entitled to a decree permanently enjoining the defendants and for an accounting.