*Morehead & Reed* for plaintiffs; *Owsley & Goodloe* for defendant.

---

## Taylor *vs* Cox. Same *vs* Lancaster.

APPEAL FROM THE BOONE CIRCUIT.

*Ejectment. Possession. Evidence.*

JUDGE MARSHALL delivered the Opinion of the Court.

IN this action of ejectment, brought on the several demises of James Taylor and others, the jury found separate verdicts for the defendants, John Cox and Thomas Lancaster, and the plaintiffs motion for a new trial, as to each, having been overruled, a separate judgment was entered for each defendant, -for the reversal of each of which judgments, the plaintiff has appealed to this Court. The two cases, thus growing out of the same trial and standing on the same record, will be considered and decided together.

The action was brought in October, 1838, for land in possession of the defendants, lying within the boundaries of John Harris' sixth survey of 5000 acres on Bank Lick and Licking, patented in 1815 to John Crittenden, and also within the boundaries of a patent to John Fowler, dated in 1811, and of a patent to Ash, Morgan, &c. dated in 1794. The defendants claimed to hold under Fowler's patent. The lessor, Taylor, claims a several title to the whole of the land in controversy, by a long possession, commenced in 1795, and also exhibits a conveyance to himself of a partial interest, undivided, in Crittenden's patent, and of a similar interest in the senior patent of Ash, Morgan, &c. The other lessors are patentees or heirs of patentees, in the last mentioned patent. But some of the patentees have not demised to

EJECTMENT.

*Case* 136.

*May* 31.

The case stated.

the plaintiff, and of course, so far as his right of recovery depends upon his showing title, derived from the patent of Ash, Morgan, &c. he can only recover to the extent of the interest of the lessors in that patent; and so far as his right depends upon title derived from Crittenden's patent, he can only recover to the extent of Taylor's interest in it. But if the lessor, Taylor, acquired the right of entry by length of possession merely, and independently of the two patents in which he claims an interest, then upon his demise the plaintiff might recover the whole of the land except so far as the right may have been barred by the continued possession of the defendants or of those under whom they claim. But there cannot be any recovery upon the title of either of the lessors of any land of which the defendants or those under whom they claim may, for seven years before the commencement of the suit, have had possession by residence or occupancy adversely to the plaintiff's lessors, and under a claim derived from the Commonwealth.

The evidence conduces to prove that, as early as 1795, John Crittenden took possession of Harris' sixth survey to the extent of its boundaries, with a small exception, not necessary to be specified, by entering and improving within the boundaries of the patent of Ash, &c. and held and claimed it as his own by having agents and tenants on different parts of it, (except as to 1000 acres which may have been held under one Breading,) until about the year 1810, when he sold it and transferred the possession to the lessor, Taylor, in whom it was afterwards, in like manner, continued for many years, and until more than twenty years had elapsed from its commencement. No possession had been taken under the elder patent, either in 1795 or at any time until long after the expiration of twenty years from Crittenden's entry, and at the time of his entry there does not appear to have been any possession adverse to him. He, therefore, acquired possession to the full extent of Harris' sixth survey, and the same possession was transmitted to and continued in Taylor, unless as to the 1000 acres above mentioned, it was held by Breading. This being the state of the possession in 1811, when Fowler's patent issued, and afterwards; the

Where two patents conflict & a possession is taken under the junior patent, when there was none under the senior, and held for more than 20 years, it is a bar to an ejectment, and moreover will authorize a recovery on such possessory title. And in such case tho' possession be taken under the elder conflicting patent, whilst possession is held under the junior, unless it be within the lap, it will not prejudice the previous possession under the junior patent, though it had not then continued for 20 years, but only extend to the actual enclosure.

entry made by one Klitte, by authority of Fowler, upon the interference between Fowler's patent and the elder patent of Ash, &c. but outside of Harris' sixth survey, with whatever intention it may have been made, or whatever may have been its effect in gaining or giving a possession of so much of Fowler's patent as did not interfere with Harris' survey, could not gain any possession within that survey, which was already possessed by others to the extent of its boundaries, even though such possession by others had not then continued for twenty years; because, there was no entry upon the possession thus held adversely to Fowler, and without such entry that possession could not be divested, but remained unaffected by the entry and improvement made under Fowler's patent outside of Harris' survey: *Poague's heirs* vs *Chinn's heirs,* (4 *Dana,* 50;) *Harrison* vs *McDaniel,* (2 *Dana,* 349–50.) And as there was, in fact, no entry under Fowler and within the survey of Harris, until 1828 or 1829 or 30, it follows, that there could have been no twenty years possession of any part of the land in contest under that patent; and that there was no interruption under that patent of the possession commenced by Crittenden and continued by Taylor or by Taylor and Breading until the entry made in one of the years just mentioned. These positions are unaffected by the question whether or not Taylor or Breading had any tenement or actual inclosure within the interference of Fowler's patent with the survey of Harris; for their possession was taken before the emanation of that patent, its extent was not limited by the boundaries of the survey on which that patent afterwards issued, (even if such survey had then been made,) and neither the subsequent making of the survey nor the issuing of the patent could have divested or contracted the existing possession, which, though not clothed with any documentary title, could only have been divested by the junior patentee by actual entry upon it.

But in the year 1815, and probably before the date of the patent to Crittenden, the possession taken by him in 1795, and transferred to Taylor, had continued for twenty years; and assuming that it was taken by Crittenden, claiming the land as his own and adversely to all others,

and that it was transferred to Taylor by absolute sale, and held by him also, as his own, independently and adversely to the world, then at the expiration of that period, so far as the land was thus held by Taylor, he had the right of entry, not only against the eldest patent which had issued before the possession commenced, but also against the junior patents of Fowler and Crittenden; and upon this hypothesis, any entry afterwards made under either of those patents, upon his constructive possession, would have confined possession only to the extent of the actual *pedis possessio* or enclosure of the person making the entry. For so far as the possession or the right of possession was concerned, Taylor then had all the rights of an elder patentee. And it is well settled that when the elder patentee is in possession to the extent of his boundaries, as he may be by entering upon any part of his patent before the junior patentee enters upon the interference, a subsequent entry upon the interference by the junior patentee, confers no possession beyond his actual close: *Chiles* vs *Jones*, (7 *Dana*, 533;) *Stith* vs *Jones*, (*same*, 433;) *Harrison* vs *McDaniel*, (2 *Dana*, 349–50;) *Massee* vs *Currie*, (1 *Dana*, 266;) *Shreve* vs *Summers*, (*same*, 239; 2 *Marshall*, 448; 5 *Monroe*, 543;) and the effect of any such entry upon the survey of Harris, &c. under the patent of Fowler, was in like manner restricted to the actual close. If the right of entry arising from the twenty years' possession adverse to the patent of Ash, &c. vested not in Taylor but in Crittenden or in him and Breading.

The possession of one co-partner enures to the benefit of, and is the possession of the other.

But before any such entry was made on the survey of Harris, and under Fowler's patent, Taylor had, by deeds of 1819 and 1821, acquired an undivided interest in the elder patent of Ash, &c. And except so far as the right of entry under that patent had not been previously destroyed by adverse possession, the union of that title with Taylor's possession had the effect of constructively extending his possession for the benefit of himself and his co-partner, to all such parts of the said elder patent as were not held adversely, and also of restricting to the actual close, the possession gained by any subsequent entry under the junior patent of Fowler. But at that time

there seems to have been no possession within the inter-ference of the three patents adverse to Taylor or Critten-den, unless the Breading tract of 1000 was then held under Breading adversely to them. It seems, also, that at that time every portion of the interference between the three patents had been held in continued possession, ad-verse to the patent of Ash, &c. for more than twenty years, unless there had been an interval in the possession of the Breading tract, at or after the time when that tract was acquired by him; so that there may not have been twenty years possession in Crittenden or in Taylor and Breading before that interval, nor in Breading after it, until the year 1822 or 1823, when his possession ceased, and Taylor, holding an interest in the elder patent of Ash, took possession of the 1000 acre tract, by putting a ten-ant on it, and so continued, except so far as he may have been disturbed by an entry under Fowler's patent in 1828, or 1829, or 1830, until his tenant was evicted by Bread-ing's heirs or alienee in 1834; before which time, (viz, in 1825,) he had acquired an interest in Crittenden's title.

Upon the evidence, the question whether there was or was not a continued possession of the Breading tract for twenty years, adversely to the patent of Ash, &c. before Taylor took possession in 1822 or 1823, is left entirely uncertain. But the early history of that possession is only material for determining whether, at the time when Taylor entered upon it, the right of entry was in Bread-ing, or belonged to the title of Crittenden or to that de-rived from the patent of Ash, &c. But however this may be, it is certain, upon the facts now appearing, that the right of entry was not in Fowler's patent. And as the possession, to the extent of the boundaries of the 1000 acres, as well as outside of them, was in Taylor, holding an interest in the elder patent, and also in Crit-tenden's title either wholly or in part, when the entry or entries were made in 1828-9 or 30, under which the de-fendants claim ; it seems to be certain that those entries upon the constructive possession of Taylor, being made without right, could have given no possession beyond the actual close, though the right of entry may have been in

Breading and not in Taylor, or those under whom he claimed. And as it appears that neither the defendant, Lancaster, nor John Cox, had any inclosure within the Breading tract, though it includes some of the land claimed by them, it follows that they have no possession within the boundaries of that tract, and, therefore, it is unnecessary to decide whether the right of entry, as to that tract, was in one of the lessors or in Breading. The possession of that tract not being in the defendants, cannot be recovered in this action, and it is immaterial who has the title.

A power of attorney, purporting to have been executed in 1801, purporting to authorize a conveyance of land, and a deed purporting to be made in pursuance thereof and a fee bill of the clerk of the proper court, dated in 1803, purporting to be for the fee for recording the power and writing the deed, are competent evidence in 1833, because of their antiquity, tho' the power of attorney was not recorded nor otherwise sufficiently proved, when a possession had been held in conformity to such documents of title.

If, however, it had been material to determine as to the nature of Breading's interest and the effect of his possession, we are of opinion that the power of attorney of 1801, purporting to be executed by the heirs of John Harris, and by Crittenden and wife among them, and to authorize a conveyance to Breading of 1000 acres of the land of Harris, on the waters of Bank Lick creek and Licking river, and the deed of 1804, purporting to be made in pursuance of said power, and the fee bill of Taylor, dated in 1803, (if proved,) containing charges against Breading apparently for recording the same power and for writing and recording the same deed, should not have been excluded from the jury. It seems to us that the antiquity of the power and deed, coupled with the influence arising from the fee bill and the presumption arising from the possession of the land, as the jury might have found it even sufficient to authorize the reading of those instruments, though the power was not recorded in time, nor otherwise sufficiently proved.

A possession taken and held by one joint owner, and held for 20 years, is the possession of all. And if such a possession is taken and held adversely the joint tenant who is in possession acquires the legal title, and such possession enures to his

It remains to be said in relation to the possession of Crittenden and the right derived therefrom, that if he did not take possession, claiming the land as his own exclusively, but took and held it under Harris' claim, for the benefit of the proprietors thereof, and so transferred it to Taylor, the right of entry gained by the continuance of that possession for twenty years, vested in the persons entitled to Harris' survey, and unless Crittenden was the sole proprietor thereof, it did not vest in him exclusively, until the patent issued to him; and so if Crittenden took and held the possession exclusively for himself, claiming

TAYLOR
vs
COX.
SAME
vs.
LANCASTER.
exclusive ben-
efit.

the land as his own to the boundaries of the survey, and Taylor acquired and held the possession not absolutely as his own land, but in subordination to Crittenden, and looking to him for a completion of his title, the continued possession operated, to vest the right of entry in Crittenden, and could only be transferred to Taylor by conveyance, shown or presumed, from Crittenden or his heirs, or by such continued adverse possession in Taylor as would of itself give a right of entry. It has already been said, that if the possession was taken and held by Crittenden for himself, independently, as of his own land, and was transferred to Taylor by executed sale of the land, and was held by him independently, the right of entry was invested in him at the end of the twenty years, against all the patents.

The instructions, numbered 7th, 8th and 9th, given on motion of the defendants, relating to the extent of the possession that might have been acquired by the entry of Klette, upon the interference of Fowler's patent, with that of Ash, Morgan, &c. and by the subsequent entries of the defendants, or those under whom they claim, within the interference between Fowler's patent and Harris' survey, seem to be erroneous, or at least misleading, inasmuch as they imply that the jury might find that by the first entry Fowler acquired possession to the extent of his patent, without regard to the constructive possession of Taylor or of Taylor and Breading, and also, that the subsequent entries of the defendants, or those under whom they claim, within the survey of Harris, might give them possession beyond their actual enclosures, notwithstanding the possession of Taylor, and though the right of entry was not in them or in Fowler, under whom they entered; which finding, under our view of the law, as stated in this opinion, the evidence did not authorize. The instruction, number two, given for the defendants, importing, that if they had been in peaceable possession for seven years, of the land in contest, and embraced by certain deeds therein mentioned, which are conveyances to Taylor or his grantors, of the title under the patents of Ash, &c. and Crittenden, said deeds should be disregarded, must also be deemed erroneous, inasmuch as it does

A successful plaintiff in ejectment is entitled to recover not only what of the premises may have been in possession of the defendant at the institution of the suit, but for any extension of possession within plaintiff's claim pending the litigation.

not make out a case of champerty, which would render the deeds void, nor of such possession of seven years as would, by barring the action, render the deeds ineffectual for any purpose of the suit; and as the evidence would not have authorized the rejection of the deeds on either of these grounds, the instruction was calculated to mislead, and was prejudicial and erroneous.

The Court also erred in giving instruction, number eleven, that if the jury found for the plaintiff at all, it could only be to the extent that the defendants were in possession at the service of the declaration. We suppose the recovery, if there should be one, should include not only any extension which the defendants may have made of their improvements, after suit brought, if made under their original claim of title, boundary and possession, but also, any new and detached improvements which they may have made in the same period, and under the same claim of title, boundary and possession, such extended or detached improvements being also within the same title of the plaintiff, which was litigated in the trial. There being, however, no evidence of any such extension or new improvement, nor any claim of the defendants but their original claim under Fowler, no instruction on this subject seems to have been necessary or proper, but the jury should have been left to find upon the proof of title and possession under the instructions applicable to those subjects, and the plaintiff, if successful, should have been left to have the judgment executed in the usual mode at his peril.

The 13th instruction, if given at all, should have been explained by adding that the patent and survey furnished, of themselves, sufficient evidence that the boundaries therein specified were actually demarked. There was, also, oral evidence to the same effect.

The Court having instructed the jury, on motion of the defendants, that there could be no recovery under the patent of Crittenden, unless it included the entry or a part of it, should also have instructed them, as asked to do by the plaintiff, that the patent itself, furnished, *prima facie*, sufficient evidence of such correspondence. Whether this instruction was given or not, is not certain,

the two bills of exception being contradictory on that point. The Court also erred in refusing a new trial, on the ground of error in the instructions, and of the verdict being against the evidence.

For which errors each of these judgments is reversed, and each cause is remanded for a new trial, in conformity with the principles of this opinion.

*Cates & Lindsey* for appellant.