CASE 52.—ACTION BY MARGIE WAGNER AND ANOTHER
AGAINST JAMES HATCHER.—March 9, 1910.

# Wagner, &c. v. Hatcher

Appeal from Pike Circuit Court.

A. J. KIRK, Circuit Judge.

From the judgment plaintiffs appeal.—Affirmed.

1. Judicial Sales—Rights of Purchaser—Writ of Possession.—
A sheriff had no legal authority under a writ of possession
issued in favor of a· purchaser of land at a judicial sale to
dispossess ·adverse claimants against whom the writ was
not issued, and who were neither parties nor privies to the
action wherein it originated, and they were not bound to
obey the same.

2. Judgment—Persons Bound by Decree.—A decree has no
legal efficacy against persons not party or privy to the
suit in which it was pronounced.

3. Attachment—Wrongful Attachment—Liability.—Persons su-
ing for damages for unlawfully depriving them of possession
of land cannot be heard to say they were prevented from
removing dead timber by a writ of possession issued in an
attachment suit wrongfully prosecuted, where they were
not bound to obey the writ.

4. Attachment—Wrongful Attachment—Liability.—The mere
threat of plaintiff in attachment to send the sheriff if at-
tempt was made to remove dead timber from the attached
land would not justify the owners in failing to remove it ·so
as to sustain a claim for damages on account of its loss
through being deprived of possession; the attachment hav-
ing been declared invalid.

5. Appeal and Error—Review—Finding of Chancellor.—The
finding of a chancellor on a question of fact will not be re-
versed where the evidence is about equiponderant.

6. Malicious Prosecution—Defense of Action—Malice.—Where
a defendant sued for depriving plaintiffs of possession of
land bought the land by virtue of a judgment of a court of
competent jurisdiction, it cannot be said he maliciously de-

fended a suit to cancel his deed and quiet title, and so plaintiffs cannot recover expenses for witnesses and attorneys in successfully prosecuting such suit.

WALTER S. HARKINS, JAS. GOBLE, ROSCOE VANOVER, and S. M. CECIL for appellants.

R. C. BURNS for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

On the 26th day of February, 1892, T. B. Scott purchased from one Meyer Schamburg a certain tract of land in Pike county, Ky., and received a conveyance therefor. On June 4, 1892, Scott and wife sold and conveyed this land to T. P. Wagner. Before these sales A. J. Auxier and James M. York, on the 18th day of June, 1890, instituted a suit against Meyer Schamburg and others for a debt due them. They procured orders of attachment against the property of the defendants in that action. The defendants owned two tracts of land. Auxier and York obtained judgment for their debt at the January, 1899, term of the Pike circuit court, sustaining their attachment and decreeing a sale of the two tracts of land to satisfy the judgment. The two tracts in question were sold on March 20, 1899, and purchased by James Hatcher. The sale was approved by the court, both tracts were conveyed to Hatcher, and he was awarded a writ of possession. Neither Scott, Wagner, nor the latter's wife was a party or privy to this action. Thereupon Wagner instituted suit against James Hatcher to cancel the deed to him in so far as it embraced the land purchased by Wagner, and to quiet his title to same. On the trial of that case it appeared that the attachment was levied by delivering a copy to J. H. Leslie and posting a copy on J.

H. Leslie's land.   The tract in controversy was sit-
uated about one-half mile from the land on which the
copy of the attachment was posted.  The lower court,
therefore, held that the levy of the attachment was
not sufficient to create a lien upon the tract in con-
troversy which would affect a subsequent purchaser,
lessee, or incumbrancer.   Judgment was accordingly
entered in favor of Wagner.  On appeal to this court
the judgment was affirmed.  Hatcher v. Wagner, 120
Ky. 603, 87 S. W. 778, 27 Ky. Law Rep. 1016.   After
the judgment in the above action was affirmed by this
court, Wagner and his wife instituted this action
against Hatcher for damages for unlawfully depriv-
ing them of the possession of their land during the
pendency of the action above referred to.   The action
was instituted at common law, but by consent was
transferred to equity.   The court awarded the Wag-
ners damages in the sum of $5.   From that judgment
they have appealed.

The various grounds for recovery set out in the
petition are as follows:   (1) Hatcher took possession
of about six acres of land outside the boundary of
land which he claimed to have purchased and for
which he was awarded a writ of possession, and kept
appellants out of the possession and use of it for
three years.   Its rental value was $100 per year.
On this item appellants sought a recovery of $300.
(2) Hatcher took possession of 12 acres of clover,
also outside the boundary of land which he claimed to
have purchased, tore down the fence, and let stock
of the neighborhood run on the clover and destroy
it.   This resulted in a loss of $200.   (3) Hatcher took
possession of a certain field within the boundary
claimed to have been purchased by him, and withheld
the possession thereof from appellants for three

years, to their damage in the sum of $135.  (4) While Hatcher was claiming the land, appellants sold a part of it to James Clark, but, because of Hatcher's claim, Clark refused to pay for it.  Clark was sued by Hatcher for taking timber from the land, and appellants had to defend this suit at a cost of $300.  (5) Just before Hatcher took possession of the land a large amount of timber growing on it was killed by fire.  Appellants made preparation to take it to market before it became damaged, but Hatcher interfered, claimed the land, and threatened to sue them if the timber was taken off; thus preventing them from doing so, and it became a total loss.  The timber was worth $1,500.   (6) Appellants were preparing to clear for cultivation a portion of the land consisting of about 12 acres, and Hatcher prevented this for three years, which damaged them in the sum of $300.  (7) After Hatcher had purchased and obtained a deed for the land, appellants were forced to prosecute a suit against him to cancel his deed and quiet their title.  For this purpose they employed counsel and paid them $385.  It cost them $500 in money and time to prosecute the suit and protect their land against Hatcher's unfounded claim.  This loss was the result of Hatcher's unfounded claim, as he had no reasonable grounds to believe that he was the owner of the land.

These claims for damages were paragraphed as above set out.  Hatcher demurred to each paragraph of the petition, and it was sustained to the third, fourth, fifth, sixth, and seventh paragraphs, and overruled as to the first and second.  Thereupon appellants amended their petition.  Hatcher then demurred to each paragraph of the amended petition. It was overruled as to the first, second, third, and fifth

paragraphs, sustained to the fourth and sixth paragraphs, and to all that part of the seventh paragraph which sought to recover the sums paid to attorneys. The demurrer was overruled as to the claim for expenses in prosecuting the suit. Thereafter Hatcher filed an answer, in which he admitted taking possession of the land, but claimed that it was merely formal, and that it was not detained from appellants for a single day. The answer also contains a denial of the allegations in the various paragraphs to which the demurrer had not been sustained.

The facts developed from the record are as follows: After the purchase of the tract of land out of which this action grows, appellee Hatcher obtained a writ of possession for the land in the action of Auxier and York against Schamburg and others. That writ was issued in the following manner: Hatcher, in Company with the sheriff and one or two others, went to the land. The sheriff laid the fence down in two places. Thereupon Hatcher rented the land to one Mont Hatfield, who occupied a tract of six acres outside of the land in controversy. No other possession was taken of the land. Wagner testifies that he was not on the land the day the sheriff attempted to deliver possession thereof to Hatcher. When he returned, he found the fences down. The fences were permitted to remain in that condition for a long time thereafer. He says there were 12 acres of clover and grass taken outside of the writ. The fence was torn down and remained down until the following spring. The clover and grass were destroyed by the neighborhood stock. He further testified that he did not remove the damaged timber from the land in controversy because Hatcher sent him word that he (Hatcher) would send the

sheriff out there if Wagner attempted to remove the timber. Wagner also testified to the possession by Hatcher of the six acres of land outside the writ, and to the rental value of this land. As to the timber damaged by fire, the evidence for Wagner is to the effect that, if the timber had been removed in reasonable time, a large portion of it would have been saved; that, when timber is deadened by fire, it decreases in value very rapidly thereafter, and if not hauled within two or three years, it is virtually destroyed. The evidence for Hatcher is to the effect that soon after Wagner returned home, and found that the sheriff had attempted to deliver possession to Hatcher, he took a shotgun and ran Hatfield off the place. Thereafter he did exercise possession over the land in controversy and did sell and remove timber therefrom. Instead of the fence, which had been taken down by the sheriff, remaining in that condition, Wagner immediately laid the fence up. Wagner put another tenant in the house occupied by Hatfield.

The argument is made on behalf of appellants that they were compelled to obey the writ of possession issued in favor of Hatcher, and to respect the possession given to the latter. This position would be sound if the Wagners had been parties or privies to the action of Auxier and York against Schamburg and others, the action in which the writ of possession was issued. As stated before, however, they were neither parties nor privies; nor was the writ issued against them. That being the case, the sheriff had no legal authority to dispossess the Wagners. This is the doctrine announced in the case of McChord's Heirs v. McClintock, 5 Litt. 304, where the court said: "The doctrine is well settled that a de-

cree has no legal efficacy against persons not party or privy to the suit in which it is pronounced, and, as the object of the writ of possession which issued in favor of the heirs of McChord was to carry into effect the decree upon which it issued, the sheriff most indubitably can have derived therefrom no authority to dispossess Sims, who was no party to the suit, and who held the possession under McClintock, who was also no party." If, then, the writ of possession was not effective as against appellants, they will not be heard to say that they were prevented by that writ from removing the timber that had been deadened by fire. In other words, they were not bound to obey a writ which had no legal effect so far as they were concerned. Nor was the mere threat on Hatcher's part to send the sheriff out there sufficient to justify appellants in failing to remove the timber. They could not heed such threat, and then claim that they were prevented from removing the timber. As appellants were not required either to obey the writ of possession or to heed appellee's threat, it is manifest that their sole right of recovery depends upon whether or not appellee did, as a matter of fact, take actual possession of the land included within the writ and of the land outside the writ. The evidence upon this question is about equiponderant, and we see no reason for reversing the finding of the chancellor. If the evidence of appellee be true, appellants were never deprived of the possession of any of the land, and the fences laid down by the sheriff were immediately laid up by Wagner.

It is next insisted that the court erred in failing to allow appellants a recovery because of the expenses they incurred in getting witnesses to the court and attorney's fees in prosecuting their action against

appellee. In this connection it is charged that Hatcher knew he did not get a good title to the land in controversy, and that he therefore maliciously resisted the claim of appellants. After all, however, Hatcher had bought by virtue of a judgment of a court of competent jurisdiction. Under this state of case, it cannot be said that he maliciously defended the suit against him. In the case of Smith, etc., v. Bell & Co., 91 Ky. 655, 25 S. W. 752, the rule is thus stated: "We do not perceive on what principle the appellees were adjudged $700 for the attorney's fees, which they allege were incurred in prosecuting the first suit named. Reasonable attorney's fees may be recovered where they have been contracted by reason of a malicious prosecution of the plaintiff by the defendant, or the defendant has maliciously attached the plaintiff's property, and in all cases of like nature, but for mere resistence to the recovery in an action of ejectment, or an action of that character, we are of the opinion no attorney's fees except those allowed by the statute can be recovered, unless some peculiar and a different state of facts from those relied on were shown. Any other expenses, such as time lost in attending the trial, stand upon the same basis in this character of actions. The case of Trustees of Augusta v. Perkins, 8 B. Mon. 207, establishing a different rule, has been expressly overruled. Smith, etc., v. Bell & Co., 91 Ky. 655, 25 S. W. 752; Worthington, etc., v. Morris' Executrix, 98 Ky. 54, 32 S. W. 269, 17 Ky. Law Rep. 624.

Judgment affirmed.