## Martin, et al. v. Hall, et al.

(Decided March 7, 1913.)

### Appeal from Floyd Circuit Court.

1. Judgment—Res Judicata.—In order for a judgment to be a bar to a subsequent suit the former judgment must have been rendered in an action between the same parties, or those in privity with them.

2. Limitation—When Arrested by Suit.—An unsuccessful action of ejectment leading to no change of possession does not arrest the running of the statute of limitations.

3. Limitation—When Arrested by Judgment.—The mere recovery of a judgment will not, of itself, stop the running of the statute of limitations; there must be an actual change of possession by virtue of the judgment to stop the running of the statute.

4.  Adverse Possession—When Broken.—Temporary breaks of fences
    or inclosures, relied upon to constitute adverse possession, will
    not stop the running of the statute of limitations if enough of the
    fence or inclosure remains to give notice of the extent of an ad-
    verse claim, or if there is still an.actual and visible appropriation
    of the land, commenced and continued under a claim of right in-
    consistent with and hostile to the claim of all others.

5.  Writ of Possession.—An officer has no ·authority under a writ of
    possession, to dispossess one who was not a party to the action
    from which the writ issued, and who had possession under one
    who was not a party thereto.

6.  Land—Patents—Interferences.—Where two patents interfere in
    part, and before possession· is taken under the senior patent of
    any part of the land within· its boundary, the junior patentee
    'enters upon the land within the interference, with the intention
    of taking possession thereof, his possession will be construed to
    be co-extensive with the interference, and will not be confined to
    his fence or close; and a subsequent entry by the senior patentee
    outside the interference will not give him possession of any part
    thereof or divest the junior patentee of his possession. ,

MAY & MAY, WM. H. HOLT and WALTER S. HARKINS for ap-
pellants.

B. F. COMBS, JAMES GOBLE and H. H. SMITH for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This action was brought by the heirs of Simpson
Martin against John Hall and E. S. Frasure and wife,
to quiet the title to certain lands lying on the waters of
the Bolen Branch of the Left Fork of Beaver Creek, in
Floyd County. These lands have been so long in litiga-
tion that a brief history of that litigation is necessary to
an understanding of this appeal.

Bolen Branch and Frasure's Creek run into Left
Beaver Creek with a dividing ridge between them. In
1848 William H. McNew entered and surveyed 1,280
acres on Bolen Branch, excluding "a number of acres"
for prior claims. The exclusion aggregated about 210
acres. This survey was supposed to lie wholly on Bolen
Branch, but when actually located it extended across the
ridge which lies between Bolen Branch and Frasure's
Creek and covered part of the land known as the "Jus-
tice Surveys," under which appellees claim. Prior to
1873, Simpson Martin, appellants' ancestor, had long
lived upon and was the owner of several surveys lying on
the waters of Bolen Branch. He claimed all the lands

lying upon that Branch, one of his surveys covering the whole of it.

At that time John Hall, one of the appellees, owned several surveys lying on the waters of Store House Branch of Frasure's Creek, while Wilson Hall was the owner of other lands lying on the Middle Branch of Frasure's Creek. Martin and the Halls, and those under whom they held, respectively, have lived upon and possessed their respective farms for perhaps half a century. The McNew survey, when fully run out, embraced most, if not all, of the Martin, Hall and Justice surveys. McNew made this survey without regard to the claims of any of those persons. McNew did not live upon his survey, but resided in a remote part of Floyd County, many miles from this land, and in what is now Magoffin County. McNew obtained a patent for his survey in 1850, and died intestate in 1857, a resident of Floyd County. Shortly after McNew's death a suit was instituted in Floyd County to settle his estate. In 1860, Magoffin County was created out of parts of Floyd and other counties; and as the former home of McNew, as well as the home of his heirs and his administrator, and the site of some of his lands, were included in the new county of Magoffin, the case was transferred to that county for trial. The lands on Beaver Creek remained, however, in Floyd County. Pursuant to a judgment in that action, McNew's 1,280 acre survey was sold, on March 10, 1873, at public outcry, and Simpson Martin became the purchaser. It appears that Martin purchased this survey for the purpose of protecting his title to his home farm.

It further appears from the testimony of the appellant, James Martin, a son of Simpson Martin, that his father did not know the McNew survey extended over the ridge to the waters of Frasure's Creek until after his purchase, and upon his discovering that fact; he sold to Wilson Hall, who then lived on Middle Branch of Frasure's Creek, all that part of the patent lying on that branch, but failed to make him a deed. This was in about 1875. In 1879, Simpson Martin sued the appellee John Hall in ejectment, in the Floyd Circuit Court, seeking to recover possession of the land described in the McNew survey and lying on the waters of Frasure's Creek. Hall answered, claiming title under several surveys, including a survey appearing in the name of John Preston; two surveys in the name of John Gearhart, all of which were senior to the McNew survey; also one survey in the name

of James Justice, made in 1851, and one to himself for 156 acres covering all of the land on the Store House Branch of Frasure's Creek, and made in 1871. That case was transferred to the equity docket, over Hall's objection. In 1885, the circuit court gave judgment against Hall and in favor of Martin, for the land in question, with the exception of Hall's enclosures. In 1886, John Hall bought the land on Middle Branch from Wilson Hall. On appeal to this court, however, the judgment in the case between Martin and Hall, above referred to, was reversed in 1889, for error in transferring the case to the equity docket, and it was remanded for a new trial. See Hall v. Martin, 89 Ky., 9. At the time of the rendition of the judgment of the circuit court and of the Court of Appeals in the foregoing case, the appellee E. S. Frasure was in possession of the Store House Branch boundary, which he had bought from John Hall in 1882. He had been put into possession of the land in that year, although he did not get a deed from Hall until 1893.

In 1888, while Hall's appeal was pending in the Court of Appeals, McNew's heirs filed a suit in the Floyd Circuit Court against Simpson Martin, James Martin and the appellee John Hall, seeking to recover the McNew survey upon the theory that the judgment of sale rendered in the suit to settle McNew's estate, and under which Simpson Martin bought in 1873, was void because the pleadings therein had failed to describe the land. The McNew case was continued on the docket of the circuit court until after the trial of the appeal between Hall and Martin in the Court of Appeals, above referred to. In 1890, after the return of the case of Martin v. Hall to the circuit court, it was consolidated with the McNew case on the motion of Simpson Martin, and was ordered to be, and was thereafter, known on the docket as "James McNew and Others v. Simpson Martin and Others." In April, 1899, the consolidated case was submitted and judgment rendered dismissing the McNew petition, and filing away the case, but without a trial of any issues between Hall and Martin. Upon an appeal by the McNew heirs from the judgment in favor of Martin, that judgment was affirmed in January, 1901, in the case of McNew's Heirs v. Martin's Heirs, reported in 22 Ky. L. R., 1275, and in 60 S. W., 412.

Simpson Martin died on May 10, 1901, and his heirs, perceiving that the suit of Simpson Martin v. John Hall

had gone off the docket, and apparently had been abandoned by him without a trial, served notice upon John Hall that they would enter a motion at the January term, 1903, to re-docket the case for the purpose of trying the issues between John Hall and Simpson Martin. On January 13, 1903, an order was entered re-docketing the case. After several unsuccessful efforts by Simpson Martin's heirs to revive the case, the circuit court, on April 9, 1904, overruled the motion to revive, and dismissed the action without prejudice, to which order the heirs of Simpson Martin excepted. Thus was ended, without a trial of any issue, the ejectment suit that had been filed in 1879 by Simpson Martin against John Hall. No further step was taken in that action.

However, in March, 1906, the present action was filed by appellants, as heirs of Simpson Martin, against John Hall and Frasure, to quiet their title to all the land in the McNew survey. At the time the suit was brought, John Hall claimed to be the owner and in possession of all of the lands on the Middle Branch, and which he had bought from his brother, Wilson Hall, in 1886; while Frasure claimed he owned and was in the possession of the lands on the Store House Branch and around the mouth thereof, which he had bought from John Hall in 1882. They set out those boundaries in their answer, and it is such parts of these tracts as are within the McNew survey, and lying on Middle Branch and Store House Branch of Frasure's Creek, that constitute the disputed property in this action. Appellees claim no land on Bolen Branch.

The chancellor dismissed the petition as against the appellee John Hall, but as against the appellee Frasure the chancellor adjudged the appellants to be the owners of two small tracts of land at the extreme head of Store House Branch, while Frasure was adjudged to be the owner of the remainder of the boundary claimed by him. From that judgment the Martins prosecute this appeal, and Frasure prosecutes a cross-appeal.

Frasure claims the 156 acres upon which he lives; (1) under the John Hall survey and patent of 1871; (2) by 15 years' adverse possession; and (3) under the Hall deed to him of 1893; while Hall claims the land occupied by him on Middle Branch; (1) through his purchase from Wilson Hall, who bought from Simpson Martin; (2) a part thereof through his purchase from James Justice;

and (3) under his adverse holding for a period of 15 years.

In addition to these claims of title upon the part of the appellees, and the want of title upon the part of the appellants, appellees further contend there is no title in appellants because the land embraced in the McNew patent is covered by the senior Lewis survey and patent of 1789, and that appellants have shown no connection whatever with the Lewis patent.

Preliminary, however, to the consideration of the merits of the case, it is proper to pass upon several questions relating to the effect of the procedure in the former actions which have been pushed to the front.

In the first place appellants insist that the judgment in the McNew case is conclusive against Hall, who was a party defendant to that action. It is well settled that in order for a judgment to be a bar to the maintenance of a subsequent suit, the former judgment must have been rendered in an action between the same parties, or between those in privity with them. Hall and Martin were not adversary parties in that suit; and the judgment relied upon as settling the rights between Martin and Hall was not rendered in an action between them, but in an action between them on the one side and the McNew heirs on the other. Hall could rely upon it as a bar as well as Martin, but in either case it could operate only as a bar against the McNew heirs. The McNew petition was merely dismissed; the judgment did not attempt to deal with the issues between Martin and Hall. And, that appellees so understood the effect of that judgment, is apparent from their subsequent efforts to obtain a trial and ruling upon the issues between Martin and Hall. The only effect of the McNew judgment was to put the common enemy—the McNew heirs—out of court; it left the case between Martin and Hall undetermined, while the subsequent judgment dismissing the Martin petition for failure to revive the action, put the Martin heirs out of court, without prejudice, however, to their right to bring another action in their own right. This they have done in the present action.

In the next place, appellants urge in answer to Hall's plea of adverse possession, that the statute did not run during the pendency of the Simpson Martin suit against Hall, which was pending from its filing in 1879 to its dismissal in 1904. In this appellants are correct in so far as it would stop the running of the statute pending that

action; but the rule does not apply so as to stop the running of the statute against a subsequent action. The rule is stated in 1 Cyc, 1018, as follows:

"An unsuccessful action leading to no change of possession does not arrest the running of the statute of limitations, and this is true whether the action is prosecuted to judgment or whether the suit is voluntarily abandoned or dismissed for want of prosecution. While the adverse possession of a defendant in ejectment during the pendency of the suit cannot ripen into an absolute title, yet the effect of the statute of limitations is neutralized only in respect of the particular suit and the plaintiff therein, and after the determination of that suit, the statutory limitations having meanwhile expired, no subsequent action can be brought to question that title or possession. * * *

"Furthermore, the mere recovery of a judgment will not of itself stop the running of the statute of limitations. There must be an actual change of possession by virtue of such judgment, and where the plaintiff in ejectment neglects to enforce his judgment within the period laid down in his demise, his right of entry under that judgment is altogether gone."

Smith v. Hornback, 4 Littell, 232; 14 Am. Dec., 122; Peak v. Chambers, 5 Dana 64; and Petty v. Malier, 15 B. Mon., 604, sustain the principle above announced. Simpson Martin's ejectment suit of 1879 was based upon his verified petition that Hall was then in possession of the land in controversy; and as there is no claim that he was ever actually dispossessed, limitation had run in his favor when this suit was instituted in 1906.

It is further insisted, however, that a writ of possession having issued in the McNew settlement suit in 1877, directing the sheriff to put Simpson Martin into possession of the McNew patent in accordance with his purchase and the sheriff's return showing that he had executed the writ by putting Martin in possession of said boundary of land, except the prior claims, the running of the statute of limitations was thereby arrested. A similar writ was issued in 1886 in the ejectment suit of Martin v. Hall, which, by the sheriff's return is likewise shown to have been "executed by putting the within named Simpson Martin in possession of the described tract of land, Nov. 19, 1886." This last writ, however, excepted Hall's enclosed lands.

The writ of 1877 was against the McNew heirs only. Neither Hall nor Frasure was a party to that action and no judgment had gone against either of them. Hall's tenant was living upon the Hall land, but he was not ejected nor molested in any way—he was not even seen by the sheriff or asked to surrender possession or informed of the execution of the writ. All the sheriff did in executing the writ was to make an opening in Hall's fence by laying down the rails, and then departing. No one was dispossessed; no one was placed or left in possession by the sheriff, and neither Martin nor any one representing him was there to take possession. This act on the sheriff's part did not interfere with Hall's possession. In 1 Cyc, 1022, it is said:

"Temporary breaks in fences or inclosures, relied upon to constitute adverse possession, will not stop the running of the statute of limitations if enough of the fence or inclosure remains to give notice of the extent of the adverse claim, or if there is still an actual and visible appropriation of the land commenced and continued under a claim of right inconsistent with and hostile to the claim of all others."

Moreover, under this state of facts, Martin's possession was constructive only, and cannot be construed as more extensive or effectual than he had a right to claim under his judgment and writ against Hall, and as Martin had no judgment against Hall, who was not a party to the McNew suit from which the first writ issued, the execution did not affect Hall, who continued to hold the land. Wagner v. Hatcher, 137 Ky., 411. In the early case of McChord's Heirs v. McClintock, 5 Littell, 304, the rule was announced as follows:

"The doctrine is well settled that a decree has no legal efficacy against persons not party or privy to the suit in which it is pronounced, and as the object of the writ of possession which issued in favor of the heirs of McChord was to carry into effect the decree upon which it issued, the sheriff most indubitably can have derived therefrom no authority to dispossess Sims, who was no party to the suit, and who held the possession under McClintock, who was also no party.

"The sheriff having, therefore, transcended his authority in dispossessing Sims, it was, we apprehend, not only proper, but incumbent upon the court to correct the abuse of its process by awarding a writ of restitution."

The question is fully discussed and the same conclu-

sion reached by the court, speaking through Judge Robertson, in Kercheval v. Ambler, 4 Dana, 166.

The second writ of possession was issued in 1886 in Martin v. Hall, the year after Martin had obtained his judgment ejecting Hall. The acts of ouster and possession upon the part of the sheriff were no more specific or definite than the similar official acts of the sheriff under the writ of 1877, above described. Hall was never ousted, but, on the contrary, he remained in the undisturbed possession of the land he had bought from Wilson Hall. Moreover, the judgment under which this writ issued was reversed in 1889; and if Hall had actually been dispossessed thereunder, he would, upon the reversal, have been entitled to restitution, but as he was never dispossessed, proceedings by way of restitution were unnecessary. As Frasure was not a party to either suit, and was never actually dispossessed, what has been said concerning the effect of the first writ upon Hall's possession applies with equal force to Frasure's possession.

Appellants acquired no possession by virtue of either writ of possession of any land held adversely by either Hall or Frasure. Therefore, the case goes back to the question of the title of Hall and Frasure, respectively. Without going into the several titles in detail, it is sufficient to say that the lands adjudged to appellees are embraced within the boundary of the McNew patent under which appellants claim; but appellees and their vendors first acquired possession of the interferences to the exterior lines of their respective claims, which has remained unbroken and undisturbed to the present time—a period of more than fifteen years. John Hall's possession under the deed from Wilson Hall in 1886 and under the parol purchase from Simpson Martin in 1875 was sufficient to give him title. Gilbert v. Kelly, 22 Ky. L. Rep., 353, 575 S. W. 228; Blanton v. Howard, 148 Ky., 547. In Fox v. Hinton, 4 Bibb., 559, this court held that where two patents interfere in part, and before possession is taken under the senior patent of any part of the land within its boundary, the junior patentee enters upon the land within the interference, with the intention to take possession thereof, his possession will be construed to be coextensive with the interference, and will not be confined to his fence or close. The possession of Hall and Frasure having been taken inside the McNew patent when it was vacant, and before Martin entered, their possession extended to the limits of the boundaries

claimed by them; and Martin's subsequent entry on the McNew patent outside the interference did not give him possession of any part thereof, or divest Hall and Frasure of their respective possessions. This rule is settled by repeated decisions of this court. Harrison v. McDaniel, 2 Dana, 349; Taylor v. Cox, 2 B. Mon., 429; Ware v. Bryant, 14 Ky. L. R., 852, 21 S. W., 873; Whitley Land Co. v. Lawson, 94 Ky., 604; Daniel v. Middleton, 132 Ky., 172; Ritchie v. Owsley, 143 Ky., 1; Whitley County Land Co. v. Powers' Hrs., 146 Ky., 813; Burt & Brabb Lumber Co. v. Sackett, 147 Ky., 235.

In view of the conclusion we have reached upholding the judgment of the chancellor upon the ground of adverse possession in Hall and Frasure of their respective tracts for more than fifteen years, the other defenses need not be considered; and, in view of the conflicting testimony as to the character of possession of the two small tracts here claimed by Frasure and adjudged to appellants, we do not feel justified in disturbing the finding of the chancellor. Byassee v. Evans, 143 Ky., 415; Kirkpatrick's Exor. v. Rehkoph Saddlery Co., 144 Ky., 134; Bond v. Bond, 150 Ky., 392; Burrow v. Hall, 152 Ky., 252.

Judgment affirmed upon both appeals.