[No. 3,860.]

## PRUDENCIA VALLEJO DE AMESTI ET AL *v.* JOAQUIN CASTRO ET AL.

ESTOPPEL BY JUDGMENT IN EJECTMENT.—The general rule is that when a title is put in issue, and tried in an action of ejectment, the judgment will conclude the parties and their privies from again litigating the same title.

IDEM.—The claimant of an inchoate Mexican grant, who has commenced proceedings to have the grant confirmed by the United States Courts, has not the same title, within the meaning of the above rule, that he has after the grant has been confirmed, surveyed and patented, and is not therefore estopped, after the patent issues, by a judgment in ejectment rendered against him before the confirmation, survey and issuance of the patent.

IDEM.—Although the State Courts may adjudicate rights claimed under an
inchoate Mexican grant, yet if such adjudication be adverse to the claim-
ant, the judgment will not conclude him from asserting his rights in a
new action, if, when his claim is confirmed and patented, the land
formerly in litigation is within the calls of his patent.

APPEAL from the District Court, Twentieth Judicial Dis-
trict, County of Santa Cruz.

On the 26th of November, 1833, Jose Figueroa, then
Governor of California, granted to Joaquin Castro the
rancho, known as "San Andreas," in the present County of
Santa Cruz. On the 18th of April, 1823, Don Luis Anto.
Arguella, then Governor of California, granted the rancho
"Corralitos" to Jose De Amesti, and, on the 1st of April,
1844, Manuel Micheltorena, then Governor of California,
gave him a confirmatory grant.

The other facts are stated in the opinion.

*Currey & Evans*, for the Appellants.

The objection that "the plaintiffs had shown a new title
to the lands in controversy, by said patent," is not a valid
objection, to the judgment offered as evidence, because the
patent is founded on the Mexican grant to which it refers,
and the right and title of the said Jose De Amesti in the
premises now in controversy, was fully and finally deter-
mined by the judgment in the action of the Executors of
Castro against said Amesti.

Whatever right and title becomes vested in the patentee,
by virtue of a patent issued upon a confirmed Mexican land
grant, under the Act of March 3, 1851, entitled "An Act to
ascertain and settle the private land claims in the State of
California," and Acts of Congress on the same subject sub-
sequently passed, subsists fundamentally in the right and
interest of the patentee as it was in the grantee, derived
from the Mexican nation by virtue of a concession made be-
fore the treaty of Guadalupe Hidalgo. A confirmation pre-
supposes a thing *in esse*, which is its subject-matter, and the
act of confirmation is the giving of new strength or assur-
ance to, or additional evidence of the right and title of the

confirmee of, in and to that which upon the face of the record is his property.

The fifteenth section of the "Act to ascertain and settle the private land claims in the State of California" (9 Stats. at Large, 684,) provides "that the final decrees rendered by the said commissioners, or by the District or Supreme Court of the United States, or any patent to be issued under this Act, shall be conclusive between the United States and the said claimant only, and shall not affect the interests of third persons;" whereby it appears that Congress did not undertake to do more than to provide for the transfer, by patent, of that which belonged to the United States. The patent is made conclusive between the United States and the claimants only.

*Wm. Irvine,* for the Respondents.

Until patents issued the title to the lands claimed under the respective grants was, intermediate the ratification of the treaty of Guadalupe Hidalgo, and the date of the patents, vested in the United States, subject to an equitable obligation to convey to each grantee the quantity granted to him, and to locate that quantity.

It follows that title, in the action of ejectment, could not have been put in issue, tried or determined; because neither plaintiff nor defendant therein had title—only an inchoate equity, a right of possession to all within the exterior boundaries named in each grant, to be subsequently limited by the United States.

But the judgment of the United States District Court, and the United States Circuit Court affirming the same, and fixing the bounds of plaintiffs' and defendants' grants respectively, and so as not to lap; or, in other words, determining that defendant herein was not entitled to the land in controversy, but that plaintiffs were, was a later judgment than the judgment plead in bar. Those Courts had jurisdiction of the persons, and exclusive jurisdiction of the subject-matter, and it had the effect to determine the question of title adversely to appellants; to supersede the former judgment. (*The United States* v. *Armijo,* 5 Wallace, 41;

*Treadway* v. *Semple,* 28 Cal. 655, 659; *Semple* v. *Wright,* 32 Cal. 666; *Rodrigues* v. *The United States,* 1 Wallace, 582; *U. S.* v. *Halleck,* 1 Wallace, 453.)

By the Court, CROCKETT, J.:

The case shows that prior to the year 1850, Amesti and Castro were respectively and severally in the possession of two contiguous ranchos known as the "Corralitos" and "San Andreas," each claiming under an inchoate Mexican grant. In that year the executors of Castro brought an action of ejectment against Amesti for the recovery of a parcel of land, claiming that it was included within the San Andreas Rancho, and belonged to the estate of Castro. In his answer, Amesti sets up title in himself, under the grant to him of the "Corralitos." The action resulted in a verdict and judgment for the plaintiffs therein, which became final in the year 1859. In the meantime, proceedings for the confirmation of the titles to the two ranchos had been progressing before the proper tribunals of the United States; and in the year 1861 a patent in due form issued to Amesti, which includes the premises recovered by the executors of Castro in the ejectment suit. Castro's claim to San Andreas was also finally confirmed in 1857, and an official survey thereof was made by the Surveyor-General, which was approved by him in November, 1860.

The survey excluded from the rancho the premises recovered in the action of ejectment. The claimants under the grant, being dissatisfied with the survey, caused the same to be returned into the District Court for revision, under the Act of Congress of June 14, 1860, by a decree of which Court the survey was approved, and this decree was afterward affirmed on appeal to the Circuit Court, and has become final. In the year 1863, the plaintiffs, who are the heirs and devisees of Amesti, to whom his estate has been distributed, commenced the present action of ejectment to recover from the defendants claiming under Castro, the same lands, which were recovered by the executors of Castro in the former action. At the trial the defendants set up no other defense than that the judgment in the former

action estops the plaintiffs from asserting their title; and, in support of this defense, offered in evidence the judgment-roll in that action. The Court excluded the evidence and entered judgment for the plaintiffs. On the appeal by the defendants the only ground of error relied upon is the ruling of the Court in excluding the judgment-roll.

So far as I am aware, the question here presented is *res integra* in this Court. We have been referred to no case, nor am I aware of any, in which the question has been decided. The general rule, however, is well settled in this State and elsewhere, that when title is put in issue and tried, in an action of ejectment, the judgment will conclude the parties and their privies from again litigating the same title in another action between the same parties or their privies. If it were conceded, therefore, that the title which the plaintiffs now hold under their patent is the same title within the true meaning of the rule, which was in issue or might have been asserted in the former action, there would be an end of the argument. But, in my judgment, it is not the same title within the sense of the rule. When the former action was tried, Amesti had only an incipient title, but had commenced proceedings to acquire the complete title, and had proceeded so far as to obtain a concession, which implied a promise by the government that at some future time it would ascertain and definitely fix his boundaries and invest him with the absolute title. But until these acts were performed, he was permitted to occupy the land. This was his *status* and such his relation to the land, when the United States acquired California. Under the treaty of cession it became the duty of the Federal Government to examine his title, and if found to be such, that in equity and good conscience, it would have been the duty of the Mexican government to ripen it into a complete estate, with well-defined boundaries, the United States government assumed upon itself the same obligation in this respect that before rested on the government of Mexico. It alone, or its properly constituted tribunals, could adjudicate his claim, fix his boundaries and invest him with a perfect title. But while proceedings for this purpose were in prog-

ress, he was liable to be harassed with litigation in the State Courts, questioning the correctness of his boundaries, denying the authenticity or validity of his concession, and impugning his right to the possession. He had no means of preventing such litigation; and when his title and right to the possession were attacked in an action of ejectment, he had no other alternative than either to surrender his estate or defend himself as best he might, before the State Court and jury, upon his incipient title, with perhaps his vague and ill-defined boundaries. Nor had the State Court the necessary machinery or the requisite jurisdiction to investigate and determine the nature and legal effect of Amesti's title so as to conclude him by its judgment from afterward asserting it, when found to be valid and ripened into a perfect title, by the tribunals of the United States. These tribunals alone, in the last resort, could pass an authoritative judgment upon his title or estate; and when they invested him with the complete title, he acquired a new *status* which he had not before. His title, which before was only incipient, has become perfect. His boundaries which perhaps were vague, have become fixed and certain. His title, though perhaps not new in an absolute sense, has taken on a new quality, and, in a legal sense, is a different title from that which he had before.

These views find much support in *Waterman* v. *Smith*, 13 Cal. 417, 418; *Merriman* v. *Bourne*, 9 Wall. 592, and in *Montgomery* v. *Beavans*, recently decided by Mr. Justice FIELD at the Circuit. For these reasons I am of opinion that the judgment-roll in the former action was properly excluded.

I am not, however, to be understood as holding that the State Courts may not in any case adjudicate rights claimed under unconfirmed inchoate Mexican grants. All that the exigency of the present case requires to be decided, and all that is intended to be decided is that, if such adjudication be adverse to the claimant, the judgment will not conclude him from asserting his rights in a new action, after his claim shall have been finally confirmed and patented.

Judgment affirmed.

RHODES, J., concurring:

I concur with Mr. Justice CROCKETT in the proposition "that if such adjudication be adverse to the claimant, the judgment will not conclude him from asserting his rights in a new action, after his claim shall have been finally confirmed and patented;" but I think the proposition requires a qualification in order to adapt it to the exigencies of the case, that is to say, if the question on which the adjudication turned was a question of boundary, then the adjudication will not preclude him from relying upon a patent subsequently issued to him, as definitively fixing the boundaries of the land granted.

Mr. Chief Justice WALLACE, being disqualified, did not sit in this case.