FILED
07/31/2024
Clerk of the
Appellate Courts

# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
June 1, 2023 Session

## PEGGY MATHES ET AL. v. 99 HERMITAGE, LLC

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Davidson County**
**No. 17-52-IV          Russell T. Perkins, Chancellor**

———————————————————

### No. M2021-00883-SC-R11-CV

———————————————————

HOLLY KIRBY, C.J., dissenting.

I agree with the majority that, to acquire legal title or a defensive possessory right to real property through adverse possession, the Plaintiffs must show Mr. Eads had "exclusive, actual, adverse, continuous, open, and notorious" possession of the property for the requisite time. I disagree with the majority's conclusion that Mr. Eads's possession of the property was not "adverse."[1] I would hold Mr. Eads has met the requirements to show a hostile or adverse possession for common-law and statutory adverse possession.[2]

As the Defendant frames the issue, the "hostile" or "adverse" element of adverse possession requires the party claiming adverse possession to show his possession of the property was against the "true owner." Under this framing, the Defendant argues that, under the deed from Mr. Whiteaker, Mr. Eads is the "true owner" of the property, so Mr. Eads essentially asserts adverse possession against himself. As explained below, this framing is imprecise under the facts of this case; both Mr. Eads and Mr. Whiteaker had a legally-recognized interest in the property, so neither could be called the "true owner." *See Cunningham v. Norwegian Lutheran Church of Am.*, 184 P.2d 834, 837 (Wash. 1947) (The "word 'owned' is not a technical term [in property law]; . . . it is a general expression to describe a great variety of interests, and may vary in significance according to context and subject-matter.").

---

[1]     The majority does not address the issue of "[w]hether an inchoate common law adverse possession claim supersedes a valid, recorded judgment, attachment, order, injunction or other writ affecting title, use or possession of real estate", so I likewise do not address that issue.

[2]     In this context, "hostile" and "adverse" are considered synonymous. *See Hostile*, *Black's Law Dictionary* (11th ed. 2019); *Adverse*, *Black's Law Dictionary* (11th ed. 2019).

The majority apparently accepts the Defendant's framing of the question, despite its lack of precision under the facts of this case. It emphasizes that cases have said that possession must be adverse to the "true owner" of the property.[3]

Having acquiesced in the Defendant's imprecise framing, the majority then determines whether Mr. Eads's possession was hostile or adverse by asking the wrong question: As between Mr. Eads and Mr. Whiteaker, who would prevail? Answering the wrong question leads to the wrong conclusion: Mr. Eads's possession cannot be hostile or adverse because Mr. Eads would have prevailed in a dispute between Mr. Eads and Mr. Whiteaker. This is where the majority's analysis goes awry.

First, establishing the priority as between grantee and grantor does not tell us whether the grantee's possession is hostile or adverse to the grantor. As noted by the majority, as between the original parties to the deed, the title to the property generally passes from the grantor to the grantee even if the grantee does not register the deed. *See Wilkins v. May*, 40 Tenn. 173, 176 (Tenn. 1859); *see also* Tenn. Code Ann. § 66-26-101 (2022) ("All of the instruments mentioned in § 66-24-101 shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided."). That is the priority between Mr. Whiteaker and Mr. Eads. If this were a case between Mr. Whiteaker and Mr. Eads, Mr. Eads would likely prevail.[4]

But this is not a case between Mr. Eads and Mr. Whiteaker. And answering the question of who has priority does not tell us whether Mr. Eads's possession was "hostile" or "adverse" to Mr. Whiteaker for purposes of adverse possession.

Second, neither Mr. Eads nor Mr. Whiteaker can be called the "true owner" under the facts of this case. The majority's framing presumes "true ownership" is some indivisible unity that is always "somewhere." This premise is flawed. Real property ownership is more properly considered as a complex aggregate of legal relations—rights,

---

[3]    Of course, one can become the "true owner" of property by virtue of adverse possession. *DeVita v. Esposito*, 535 A.2d 364, 368 (Conn. App. Ct. 1987) ("[A] person who claims title by adverse possession is claiming that although he does not have record title, his proof of possession which is adverse, open, notorious and continuous for the entire statutory period entitles him, in an action to quiet title, to a judgment of ownership.").

[4]    "[A] tenant in possession, holding under an unregistered deed, may defend himself against the action of his vendor, because the deed will operate as an estoppel upon the vendor, and repel his action." *Rogers' Lessee v. Cawood*, 31 Tenn. 142, 146 (Tenn. 1851).

- 2 -

claims, privileges, powers, and immunities—which is not necessarily and in totality always vested in one person.

Here, the unregistered deed was not sufficient to give Mr. Eads perfect legal title or complete ownership to the property. "[A] perfect legal title will not pass by deed until it be registered." *Stewart's Lessee v. Harris*, 32 Tenn. 656, 657 (Tenn. 1853). An "unregistered deed from [the grantor to the grantee] was good as between them; but until it was registered [the grantee] did not acquire a completed title—the real title." *Glass v. Lynchburg Shoe Co.*, 192 S.E. 899, 900 (N.C. 1937) (cleaned up).[5]

Mr. Whiteaker, on the other hand, remained the record title holder, so he looked to the rest of the world as though he had perfect legal title. As to third parties without notice, the record owner is the true and actual owner, and the record owner's interest is not divested or affected by an unrecorded deed. *See, e.g.*, *Earle v. Fiske*, 103 Mass. 491, 492–93 (Mass. 1870). As to certain third parties, the deed is seen as "null and void" to transfer title. *See* Tenn. Code Ann. § 66-26-103 (2022) ("Any instruments not so registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice."). "On the contrary, as to such persons, the case must always be treated as if the title still rested in the vendor." *Wilkins v. McCorkle*, 80 S.W. 834, 837 (Tenn. 1904).

Thus, during the pertinent time, both Mr. Eads and Mr. Whiteaker had legally-recognized title interests in the property. Neither could be called the "true owner," as the Defendant frames the issue on appeal.

Importantly, as shown by the facts in this case, Mr. Whiteaker's record title interest in the property was attachable and transferable:

> It may not be very logical to say that, after a man has literally parted with all his right and estate in a lot of land, there still remains in his hands an attachable and transferable interest in it, of exactly the same extent and value as if he had made no conveyance whatever. But, for the protection of *bonâ fide* creditors and purchasers, the rule has been established that although an unrecorded deed is binding upon the grantor, his heirs and devisees, and also upon all persons having actual notice of it, it is not valid and effectual as

---

[5]  "[A]n unregistered deed vests in the grantee an equitable title, and something more; it vests in him an inchoate legal title, which becomes perfect by the registry of the deed." *Stewart's Lessee v. Harris*, 32 Tenn. 656, 657 (Tenn. 1853). Because of the registration system, "[t]he action of ejectment cannot be maintained upon an unregistered deed; for that action, where it depends upon the title, can only be supported upon a pure legal title." *Id.* at 657–58.

against any other persons. As to all such other persons, the unrecorded deed is a mere nullity. So far as they are concerned, it is no conveyance or transfer which the statute recognizes as binding on them, or as having any capacity adversely to affect their rights, as purchasers or attaching creditors. As to them, the person who appears of record to be the owner is to be taken as the true and actual owner, and his apparent seisin is not divested or affected by any unknown and unrecorded deed that he may have made.

*Earle*, 103 Mass. at 492–93 (emphasis in original). Consequently, as to purchasers without notice, Mr. Whiteaker could still transfer title to them "as if he had made no conveyance whatever." *Id.* at 492.

Thus, irrespective of who would win in a lawsuit between Mr. Eads and Mr. Whiteaker, it is undisputed that Mr. Whiteaker retained a record title interest in the property that he could assign or transfer, to the detriment of Mr. Eads.

Moreover, Mr. Eads's possession of the property conflicted with the record title interest Mr. Whiteaker retained. Prospective purchasers who learned Mr. Eads was in possession of the property would have actual notice that Mr. Whiteaker may not be the owner, so Mr. Whiteaker could not transfer title to them "as if he had made no conveyance." *Id.* Consequently, Mr. Eads's open possession of the property impinged on Mr. Whiteaker's ability to transfer his record title interest, to the detriment of Mr. Whiteaker, and conflicted with Mr. Whiteaker's record title. "A possession to be adverse must be inconsistent with the title of the claimant who is out of possession . . . ." Clark D. Knapp, *Treatise on the Law of Partition of Real and Personal Property* 70 (1887) (hereinafter Knapp, *Treatise on the Law of Partition*).[6]

We cannot know from this record whether Mr. Whiteaker ever tried to transfer his record title interest but could not do so because the prospective purchaser learned of Mr. Eads's possession of the property. No matter. We know that Mr. Eads's possession limited Mr. Whiteaker's *ability* to do so. It conflicted with Mr. Whiteaker's record title interest and was adverse to it.

To analyze the nature of Mr. Eads's possession under an ancient doctrine such as adverse possession, this Court should be mindful of longstanding principles of the doctrine. Courts have long held that a grantee's possession is presumed adverse as to the grantor, and to all the world, from the time of the conveyance. *See Villa v. Rodriguez*, 79 U.S. 323, 338 (1870) ("[W]here the legal title has been conveyed and the purchase-money fully paid

---

[6] Available at HeinOnline.org.

. . . . [t]he purchaser then holds adversely to all the world, and may disclaim even the title of his vendor."); *Merryman v. Bourne*, 76 U.S. 592, 600 (1869) ("[A] vendee . . . . holds adversely to all the world, and has the same right to deny the title of his vendor as the title of any other party.").

This presumption—that a grantee's possession is adverse as to the grantor—must be understood in light of the nature of hostile or adverse possession.[7] To be hostile or adverse, the grantee's possession of the property cannot be permissive. The Alaska Supreme Court explains that "permissive" possession implies that the possessor acknowledges his interest is subordinate to the interest of the person claiming ownership:

> [M]ere acquiescence in their use of the land cannot constitute the kind of permission which would prevent the acquisition of title by adverse possession. The whole doctrine of title by adverse possession rests upon the acquiescence of the owner in the hostile acts and claims of the person in possession. [quoting *Peters v. Juneau-Douglas Girl Scout Council*, 519 P.2d 826, 833 (Alaska 1974) (citation omitted) (alteration in original)]

> . . . The key difference between acquiescence by the true owner and possession with the permission of the true owner is that a *permissive use requires the acknowledgement by the possessor that he holds in subordination to the owner's title.* 7 R. Powell, *The Law of Real Property* ¶ 1014 at 721 (Rohan rev. ed. 1979) . . . . The possession of a grantee is presumptively adverse to his grantor. *Merryman v. Bourne*, [76 U.S. 592, 600 (1870)]. This presumption is logical because once the grantor has purported to convey property *neither he nor his grantee believe that the grantee's possession is subordinate to the grantor's title.*

---

[7] The converse is not true; a grantor's possession of property conveyed after the execution and delivery of a deed is presumed to be in subordination to the rights of his grantee, rather than adverse to the grantee's rights. *See, e.g.*, G.H. Fischer, Annotation, *Grantor's possession as adverse possession against grantee*, 39 A.L.R.2d 353, § 2 (1955) (citing numerous cases); 2 C.J.S. *Adverse Possession* § 126, Westlaw (database updated May 2024) ("As a general rule, the possession of a grantor remaining on the property after conveyance to the grantee is regarded as subservient and subordinate to the title of the grantee."). At least one case cited by the majority aligns with this presumption. *See, e.g.*, *Graham's Heirs v. Nelson's Heirs*, 24 Tenn. 605, 610 (Tenn. 1845) (vendor who sold property to vendee but remained in possession of property had "been holding in subservience to the [vendee's] right, and his possession has been consistent therewith"). The rest have unique fact patterns that shed no light on whether a grantee's possession is adverse to the grantor. *See, e.g.*, *Bd. of Educ. of Memphis City Schs. v. Shelby Cnty.*, 292 S.W. 462, 464 (Tenn. 1927) (possession of one government agency held not adverse to other because statute effected state transfer of property from one of its governmental agencies to another and adverse possession generally not applicable in case by one governmental agency against another). None of the cases rebut the historical presumption that the possession of a *grantee* such as Mr. Eads is adverse as to the *grantor*, Mr. Whiteaker.

*Hubbard v. Curtiss*, 684 P.2d 842, 848 (Alaska 1984) (emphasis added); *see also Vezey v. Green*, 35 P.3d 14, 23 (Alaska 2001) (By excluding donors' contractors from the property, donee "indicated that she claimed all rights to the property as her own; she did not recognize any residual interest held by the [donors] or any subordination of her own title to theirs."); *Acampora v. Pearson*, 899 A.2d 459, 467 (R.I. 2006) ("[T]o constitute a hostile use, the adverse possessor need only establish a use inconsistent with the right of the owner, without permission asked or given, such as would entitle the owner to a cause of action against the intruder for trespass.") (cleaned up) (citation omitted); *Ark. Commemorative Comm'n v. City of Little Rock*, 303 S.W.2d 569, 571 (Ark. 1957) ("[P]ossession, to be adverse, must be in hostility to, and not in subserviency to, the rights of the true owner.").

Mr. Eads's possession was neither subordinate nor permissive as to Mr. Whiteaker's record title interest. No facts rebut the historic presumption that Mr. Eads's possession was adverse. Once Mr. Eads's bankruptcy concluded in 1991, his possession of the property was adverse and hostile to the rights of all others, including Mr. Whiteaker's record title. *See Taffinder v. Thomas*, 381 A.2d 519, 523 (R.I. 1977) (equating the "true owner" with the record owner and stating the plaintiffs need "show occupation hostile to the title of the record owner").

Indeed, Black's Law Dictionary defines "hostile possession" as: "Possession asserted against the claims of all others, *esp. the record owner*." *Hostile possession*, *Black's Law Dictionary* (9th ed. 2009) (emphasis added). The longstanding rule in Tennessee, and in the majority of states, is that "a party is not required to harbor the intent to possess another's land in order to invoke the doctrine of adverse possession." *Wilson v. Price*, 195 S.W.3d 661, 668 (Tenn. Ct. App. 2005) (citing *Liberto v. Steele*, 221 S.W.2d 701, 703 (Tenn. 1949). "'Hostility' exists, in the legal sense, when one 'holds the possession as his, against the claims of any other.'" *Id.* at 667 (quoting *Hightower v. Pendergrass*, 662 S.W.2d 932, 937 (Tenn. 1983)). "Unlike its general usage, hostility for the purposes of adverse possession does not require ill will." *Id.* Our intermediate appellate court has explained:

> The possession of one who holds property as his own is adverse to all the world, although he never heard of an adverse claim. The possession, use, and dominion may be as absolute and exclusive where there is no dispute as to boundary, and hence the occupant has no actual intention to claim adversely to anyone, as where such an intention exists. And, in the absence of anything showing that he holds in subservience to the true owner, such possession must be held adverse. When a person goes into possession of

- 6 -

land under a deed, he regards himself as the owner of specific land, of the particular ground which he sees with his eyes and furrows with his plow.

*Gibson v. Shular*, 194 S.W.2d 865, 867 (Tenn. Ct. App. 1946).

That Mr. Eads believed in good faith he owned the property outright by the virtue of the deed does not undermine his claim of adverse possession:

It is true that the usual adverse possession is a wrongful one but there is no legal requirement that it be so. The possession of anyone claiming to be the owner against the whole world, on whatever ground, rightful or wrongful, would seem to be adverse in the legal sense, even as to the possessor's grantor against whom he may have no consciousness of hostility.

W.W. Ferrier, Jr., *The Recording Acts and Titles by Adverse Possession and Prescription*, 14 Calif. L. Rev. 287, 290 (1926). In fact, "the possession of the holder of a valid title would seem to be the very acme of adverse possession." *Id.*

Courts have allowed parties with an unrecorded deed in possession to claim title by adverse possession or defensive statutory adverse possession. *See, e.g.*, *Twinton Props. P'ship v. Nidiffer*, 44 B.R. 426, 432–33 (Bankr. M.D. Tenn. 1984) (applying Tennessee law to determine that Twinton proved a satisfactory chain of title to the land in question and "[a]lternatively, Twinton holds legal title through adverse possession[]" under Tennessee Code Annotated section 28-2-101.); *Gordon's Lessee v. Parsons' Ex'rs*, 1 S.C.L. 37, 37–38 (S. C. 1786) ("[N]otwithstanding the deed to old *Gordon* had not been first recorded, according to the directions of the act, so as to give him a title thereby; yet the plaintiff might relinquish his claim under it, and go into his *statutory title of possession*; which being clearly proved, they thought entitled the plaintiff to a recovery.") (emphasis in original); *Smith v. Cross*, 140 S.W. 1060, 1065 (Tenn. 1911) (holding a deed, even if good between the parties to it but ineffective due to void acknowledgment or registration, could be used to assert defensive possessory right under adverse possession statute pertinent at the time); *Sessoms v. McDonald*, 75 S.E.2d 904, 907 (N.C. 1953) ("The plaintiffs' unregistered deed does not prevent their setting up adverse possession for twenty years . . . ."). These cases are consistent with the longstanding principle that possession of a grantee is presumptively adverse to his grantor. *Merryman*, 76 U.S. at 600.[8]

---

[8] The majority claims these cases "are inconsistent with Tennessee's jurisprudence regarding the adversity requirement," but then says Tennessee "precedents point in two different directions." This is not explained.

Authorities on adverse possession agree: "It is immaterial whether the title be defective or not, or whether the occupants make color under a written or parole contract, or even any contract at all." Knapp, *Treatise on the Law of Partition*, *supra*, at 71. The holder of an unrecorded deed in possession of the property may rely on his possession for the requisite time instead of the deed: "[I]f on the trial the defendant shows that he took possession, claiming under a deed; he is not bound to produce the deed, though called for by the plaintiff, but he may rely on his adverse possession." *Id.* The possession of Mr. Eads as grantee was adverse to the interest of Mr. Whiteaker, the grantor:

> A grantee in fee may hold adversely to the grantor, and there is no good reason why he should not be at liberty to deny that the grantor had any title. If he purchases and takes a conveyance in fee, he owes no fealty to the grantor, and is chargeable with no disloyalty in denying his title. . . . It follows, therefore, that the grantee may set up an adverse possession against his grantor and claim the benefit of the statute of limitations under color of his conveyance.

William Wait, *Treatise Upon Some of the General Principles of the Law, Whether of a Legal, or of an Equitable Nature, Including Their Relations and Application to Actions and Defenses in General* 449 (1885).[9] *See also Pendley v. Pendley*, 338 So.2d 405, 407 (Ala. 1976) ("'One who goes into possession under an oral transfer from the owner may assert the statute against the owner after the statutory period, since his possession is under a claim of right which is necessarily exclusive of the transferor. A grantee's possession is adverse to the grantor, whatever may be the defects in the grant.'" (quoting Herbert Thorndike Tiffany, *Law of Real Property and Other Interests in Land* § 550, pg. 480–81 (3d ed. 1920)).

Legal encyclopedias recite similar principles, that neither the deed nor the earlier installment contract made Mr. Eads's possession subordinate to Mr. Whiteaker or anyone else. "Possession of a grantee has been regarded as adverse to the grantor, irrespective of the validity of the deed, so that it may ripen into title by limitation." 2 C.J.S. *Adverse Possession* § 125 (*Possession by grantee as hostile against grantor*), Westlaw (database updated May 2024); *see also* 3 Am. Jur. 2d *Adverse Possession* § 179, Westlaw (database updated May 2024) ("A grantee's possession becomes adverse, not only as to the grantor but also as to all the world, from the time a conveyance has actually been made."). "[T]he possession of a grantee in an absolute deed is adverse not only as against the grantor but

---

9     Available at HeinOnline.org.

also as against third persons." 2 C.J.S. *Adverse Possession* § 124 (*Possession by grantee as hostile against third persons*), Westlaw (database updated May 2024).[10]

The majority assures that its holding is limited, that it holds only that a grantee's failure to record his deed renders his possession not hostile to the grantor. I wish that were so. The majority does not make a policy decision based on the recording statutes; it instead chooses to rejigger the analysis of whether possession is hostile to base it on the *priority* between the parties. This sets the stage to change adverse possession analysis in a fundamental way. There are as many types of defect in title as there are stars in the sky. A deed can be effective to give title as between grantor and grantee, and yet ultimately fail as to third parties for many reasons beyond failure to record. *See, e.g.*, *Hitt v. Caney Fork Gulf Coal Co.*, 139 S.W. 693 (Tenn. 1911) (deed registered with defective certificate good between parties to the deed but not as to third parties); *Thomas v. Hedges*, 183 S.W.2d 14, 16 (Tenn. Ct. App. 1944) (deed without acknowledgment still effective as between parties). The majority's shift in analysis of hostile possession to focus on priority may have unforeseen effects in many situations.

The majority's incorrect analysis undermines important property law policies served by the doctrine of adverse possession, whether it arises under common law or under statute. "At common law there was no time limited within which it was necessary to bring actions for the recovery of realty. . . ." WM. Henry Malone, *A Treatise on Real Property Trials.* 259 (1883).[11] The result of early adverse possession statutes is that "the possession being *adverse* for the period [required by the statute] gives the *fee* to the possessor, and of course *extinguishes* the title of the original owner." *Id.* (emphasis in original). "Adverse possession is a legal idea, admits of a legal definition, of legal distinctions, and is correctly laid down as a question of law, and may be set up against any title whatsoever, either to make out a title under the statute of limitations, or to show the nullity of a conveyance executed by one out of possession." Knapp, *Treatise on the Law of Partition*, *supra*, at 67.

---

[10] *See also Core v. Faupel*, 24 W. Va. 238, 244 (1884) ("[W]here the purchaser is in possession under a complete legal title, such as a deed purporting to convey the land, he will be considered as holding adversely to all the world, including his vendor from whom his title and possession are derived. The entry or the holding in such case imparts no recognition of a subsisting title in another, by whose permission and in subordination to whose continuing title the purchaser enters or holds."); *Parkersburg Nat. Bank v. Neal*, 28 W. Va. 744, 749 (W. Va. 1886) (citing *Faupel*, 24 W. Va. 238) ("Where the purchaser is in possession under a complete legal title, such as a deed purporting to convey the land, he will be considered as holding adversely to all persons."); *Polanski v. Town of Eagle Point*, 141 N.W.2d 281, 283 (Wis. 1966) ("Where it is admitted that the present possession is the result of a conveyance by a former owner, it is obvious that there will be no forcible entry. However, the occupation of property pursuant to a deed is presumptively and in fact an act adverse to and in derogation of the former owner's title.").

[11] Available at HeinOnline.org.

From joint operation of the statute and the common law, "it is the almost invariable rule that the effect of the statute is not only to bar the remedy of ejectment, but also to take away all other remedy, right, and title of the former owner." Arthur T. Martin, *Cases and Other Materials on the Law of Real Property* 512 (1943).[12] One scholar noted that certainty and finality are promoted by adverse possession:

> The statute is founded upon the wisest policy, and is consonant to the municipal law of every country. It stands upon the general principle of public utility . . . . The public have a great interest in having a known limit fixed by law to litigation, for the quiet of the community, and that there may be certain fixed periods, after which the possessor may know that his title and right cannot be called in question.

H.G. Wood, *Treatise on the Limitations of Actions at Law and in Equity* 535 n.1 (1883) (hereinafter Wood, *Treatise on the Limitations of Actions*).[13] Another treatise explains the importance of adverse possession in property law:

> Title by adverse possession apparently affords an instance of a right originating in a wrong; and yet, in reality, this doctrine is necessary to the perfection of just titles. This doctrine is intended for the repose of society, quieting titles automatically by lapse of time. It is not intended to give advantage to fraud or wrong, but to avoid uncertainty in the holding of property, giving security to all proprietors and enabling purchasers to rely on title so perfected. This policy is especially important in connection with real estate under our crude system of public records where many doubts and defects concerning the title arise and the difficulty of proving title is great.

Henry W. Ballantine, *Acquisition of Title by Adverse Possession Under Statute of Limitations* 22, *in* 2 Eugene Allen Gilmore & William Charles Wermuth, *Modern American Law* (1921).[14] Thus, "the great purpose is automatically to quiet all titles which are openly and consistently asserted, to provide proof of meritorious titles, and correct errors in conveyancing." Henry W. Ballantine, *Title by Adverse Possession*, 32 Harv. L.

---

[12]    Available at HeinOnline.org.

[13]    Available at HeinOnline.org.

[14]    Available at HeinOnline.org.

Rev. 135, 135 (1918).[15]  "In spite of our elaborate books of record, possession remains the great source, muniment, and quieter of titles to land."  *Id.* at 144.  "It is the very purpose of the doctrine of adverse possession to cure technical defects in the evidence of title."  *Id.* at 151.

In all of these ways, the doctrine of adverse possession establishes that, if one with defective or no title remains in uninterrupted open possession of property for the requisite time, the person in possession can be assured that the property will not be taken from him.  *See* 2 C.J.S. *Adverse Possession* § 2, Westlaw (database updated May 2024) ("The goal of the doctrine of adverse possession is the final settlement of titles, supporting the long-term productive use of land . . . .  It ensures the maximum utilization of land, encourages the rejection of stale claims, and promotes quiet titles.").  The majority's holding undermines this important property law policy.

The majority creates an exception for failure to record a deed, so the holder of an unregistered deed can never assert adverse possession against the grantor.  Respectfully, this holding undermines a bedrock doctrine in property law and destabilizes Tennessee's system for establishing title to property.[16]  I must respectfully dissent.



HOLLY KIRBY, CHIEF JUSTICE

---

[15]     Available at HeinOnline.org.

[16]     The majority's unfortunate holding could have ramifications elsewhere in Tennessee property law.  For example, color of title claims are "predicated upon the presumption that the party in possession is the real owner, or that the real owner has surrendered or abandoned his claim to the premises, or he would have asserted his claim thereto within the requisite period, to save his right."  Wood, *Treatise on the Limitations of Actions*, *supra*, at 499.  Many courts view an unrecorded deed as an instrument that is sufficient to establish color of title for adverse possession.  *See id.* at 525–26 ("A tax-collector's deed, a paper purporting to be a will, a deed from a mortgagee, or an unrecorded deed, is good color of title."); *Perry v. Perry*, 6 S.E. 86, 88 (N.C. 1888) ("So an unregistered deed is color of title . . . .  Such a deed shows the nature of the possession taken under it to be adverse, just as much as if it were registered[.]"); *Phelps v. Pecos Valley S. Ry. Co.*, 182 S.W. 1156, 1158 (Tex. Civ. App. 1916) (holding a party holding an unrecorded deed could assert color of title through adverse possession).  It is unclear how the majority's reasoning could affect such claims, especially for common-law adverse possession.